THE DENVER CITY WATERWORKS COMPANY et al.

*v.*

THE AMERICAN WATERWORKS COMPANY.

[Submitted December 16th, 1912. Decided January 31st, 1913.]

1. A foreign corporation which has brought suit to wind up an insolvent corporation, and holds shares of stock in the insolvent company, has a standing to petition the chancery court to direct the domestic receiver to discontinue his attack on the sale by a suit in the federal court.

2. It is the duty of one who brings a suit to include in it every cause of action available to him, which is consistent with the general purpose of his bill, and an available claim not therein alleged is forever lost.

3. The assets of an insolvent corporation were sold on foreclosure, and purchased by a Colorado corporation. Thereafter a person claiming to be a creditor, stockholder, and officer of the insolvent company procured an order authorizing him to make its domestic receiver a defendant to a proceeding in Colorado to set aside the sale. The receiver answered, claiming that the foreclosure proceedings were void, but judgment of the Colorado supreme court quieted the purchaser's title, and enjoined the receiver from asserting any claim thereto. Subsequently the receiver brought suit in the federal court on practically the same grounds as those in the state courts.—*Held,* that it was the duty of the receiver to have

set up in the former attack on the sale every ground which he had, and on his failure so to do, it was forever lost.

4. The action of the chancery court on report of a referee, refusing to permit or direct its receiver to take proceedings in another state to set aside a foreclosure sale of the assets of the corporation, makes his right to attack the sale *res judicata.*

5. A receiver is an officer of the court having certain statutory duties to perform, but at all times subject to the court's jurisdiction.

6. Where a domestic receiver, a party to a proceeding in another state attacking a foreclosure sale of the assets of the corporation in receivership, was forever enjoined from claiming title thereto, he will not thereafter be permitted to bring suit attacking the validity of the sale, since to do so would violate the full faith and credit clause of the federal constitution.

7. Independent of statutory provision and simply as a matter of comity, a court will extend its aid to the receiver of a foreign corporation to enable him to get possession of property which should in equity be applied in payment of its debts, and hence a receiver, a party to a proceeding in the courts of another state attacking the validity of a foreclosure sale of the assets of his insolvent, and therein enjoined from claiming any title thereto, has exhausted his right to appeal to state comity, so that the chancery court will not thereafter permit him to attack such injunction order.

8. Where a suit is a mere speculative one prosecuted as a stock jobbing operation, or for the purpose of extorting money, the chancery court ought not to allow its receiver to have any hand in it.

9. By a delay of nearly twenty years, a receiver of a corporation whose assets were sold in foreclosure and its affairs wound up, forfeits all right to take affirmative action to have the foreclosure proceeding declared void.

10. A domestic receiver will not be discharged pending his suit in another jurisdiction to set aside a sale of the assets of a corporation in receivership.

---

On motion for directions to the receiver.

This is an administration suit, its purpose being to wind up the affairs of the American Waterworks Company as an insolvent corporation. This company was incorporated on March 31st, 1891; on April 9th, 1892, the original bill was filed in this cause alleging the insolvency of the company and praying for the appointment of a receiver. On July 20th, 1892, the corporation was adjudged insolvent and one E. Hyde Rust was appointed receiver. Rust qualified and acted as receiver until his death on February 12th, 1901. The present receiver, John

S. McMaster, was appointed March 11th, 1901, and he has been acting in that capacity hitherto.

At the time of the organization of the defendant company certain properties at Denver and Omaha were transferred to it which were subject to mortgages for large amounts, and the defendant having defaulted in the payment of interest on the bonds secured by the mortgages on the property, proceedings were taken to foreclose the same, which resulted in final decrees against the company, and in pursuance thereof the property was sold at public auction and was struck off to one Underwood, representing a bondholders' protective committee. These sales were afterwards confirmed by the proper court on April 23d, 1894; the property was then conveyed to Underwood, and thus the defendant corporation lost its title thereto. On February 25th, 1895, one Venner, claiming to be a creditor, a stockholder and an officer of the defendant company, petitioned this court for an order directing the receiver to take proceedings in Colorado to set aside the foreclosure sale because of certain alleged irregularities in procedure. This resulted in an order referring the matter to the receiver and directing William H. Corbin, his counsel, to inquire into the facts and report thereon to the court. Mr. Corbin reported adversely to the petition, and this court declined to make the order prayed for. Venner then procured an order authorizing him to make the receiver a party defendant in his Colorado proceeding. These proceedings were begun on or about April 6th, 1896, by a bill filed in a Colorado state court to set aside the mortgages and the sales thereunder, to which bill the receiver (Rust) filed an answer disclaiming any right, title or interest in the cause of complaint, and protesting that he was not a necessary or proper party to the suit, and that the complainant did not state facts sufficient to constitute any cause of action against him. After the death of Rust, McMaster filed an amended answer, and answers to cross-petitions which had been filed against him, claiming that the foreclosure decrees and all proceedings thereunder were void as against him and the company which he represented, for lack of jurisdiction of himself and the company, and claiming an avoidance of all the decrees, orders, sales and proceedings in the foreclosure suits upon the

ground that it was attempted thereby to deprive him and his company of their interest, title and equity in the property in question, without giving them an opportunity to have their day in court and without due process of law, and contrary to the constitutions of the State of Colorado and the United States. Issue was joined on these pleadings and a hearing had; on June 3d, 1902, the cause was decided, and subsequently a decree was entered by which it was declared that neither the said McMaster, as receiver, nor his company had any right, title, interest or claim in or to the mortgaged premises, but that the Denver Union Water Company was the owner thereof and had been in possession thereof since October 18th, 1894, and was entitled to have its title thereto quieted and set at rest, and thereupon it was adjudged that the title of the said Denver Union Water Company in and to the said mortgaged premises be and the same was thereby quieted, and that the American Waterworks Company, the defendant herein, and John S. McMaster, its receiver, their successors and assigns, and any and all persons claiming by, through and under them, were forever enjoined and restrained from asserting, setting up or claiming any right, title or interest of any kind or nature whatever in or to the above-described premises. This judgment was affirmed on appeal by the court of last resort of Colorado, and a writ of error was taken to remove the cause into the United States supreme court, upon the ground that there were federal questions involved, which writ was dismissed on February 20th, 1911, for want of jurisdiction.

Subsequently, and on December 21st, 1911, Mr. McMaster filed an original bill of complaint in the United States district court for the district of Colorado for what appears to be the same cause of action as that which was litigated in the Colorado state court suit. An examination of the pleadings filed by the receiver in the two cases disclose the fact that they are identical in substance, in purpose and in object.

Application is now made on behalf of one of the complainants in the administration suit (the Denver City Waterworks Company), claiming to be a stockholder in the defendant corporation, to direct the receiver to discontinue this last-mentioned suit upon the grounds—*first,* that there has already been an adjudica-

tion against him on the same questions; *second,* that he in his capacity of an officer of this court is violating an injunctive order made by a competent court of a sister state and affirmed by its highest court of appeal; *third,* that state comity does not reach to the point of permitting any such proceeding on the part of a foreign receiver; *fourth,* that the receiver is not prosecuting the last suit in good faith on behalf of creditors and stockholders, but is permitting the said Venner to use his name for the purpose of disturbing titles which vested under the foreclosure suit nearly twenty years ago.

*Mr. Norman Grey* and *Mr. John M. Enright,* for the motion.

*Mr. Pierre F. Cook, contra.*

HOWELL, V. C.

The status of the complainant to move the court on its petition for the relief now sought is questioned *in limine* upon the ground that it has no interest to protect, and therefore is a mere volunteer. I think it sufficiently appears that the complainant is still the owner or holder of shares of stock in the defendant, the American Waterworks Company, and if so, there can be no question of its right to prosecute this matter. Besides, it is the complainant in the suit in which the receiver was appointed, and it comes with ill-grace for him to say that the proceeding in which he was so appointed is irregular, because he thus casts a reflection upon his own title. I hold, therefore, that the petitioner may properly take the proceeding now pending.

The first ground alleged on behalf of the motion is that there has already been an adjudication against the receiver on the same question, and this must be true if, as a matter of fact, the remedy now sought in the suit pending in the United States district court is the same sought in the previous Colorado suit. But it is urged that there are new matters alleged in the present suit which were not alleged or dealt with in the first suit. I have failed to find any such new matter, but if it exists, I do not see how under the rules of law, and the allegations in these pleadings, such new questions can be availed of by the receiver. The rule undoubt-

edly is that it is the duty of one who brings a suit to include in it every cause of action available to him, which is consistent with the general purpose of his bill, and the same rule must, from the nature of things, apply to defences. It is the duty therefore of every defendant to set up and prove every defence which he may have to the claim, and if either complainant or defendant shall omit to allege or prove any available claim or defence, such claim and such defence are lost to him forever. I had occasion to examine this question in the case of *Rosenstein* v. *Burr*, manuscript opinion filed June 14th, 1912. That was a suit to compel the specific performance of a contract to convey lands. Previously, the defendant brought a suit in this court to cancel the contract on two grounds—*first,* that it had been obtained by fraud, and *second,* that it was executed in Connecticut on Sunday, and that it was void because violative of the Connecticut Sunday laws. The bill was eventually dismissed, and its prayer denied. In defending the suit for specific performance the answer denied the due execution of the so-called agreement and the tenders of performance charged in the bill. On the hearing other defences were interposed. One was that the agreement relied upon was invalid for lack of assent, and the other was that there was a stipulation that the agreement should not be binding until it should have been made the subject-matter of a formal document, to be drawn by a scrivener and formally executed. These new defences were rejected upon the ground that they were available to the defendant as weapons of attack and defence in the first suit, and that having neglected to use them thus they were lost to him forever.

In *New York Life Insurance Co.* v. *Bangs, 103 U. S. 780*, the facts were that an action at law was brought against the life insurance company on policies of life insurance in which the plaintiff recovered. Subsequently, the company brought suit in equity to set aside the policies on the ground of fraud, to which the former recovery was pleaded as a defence. The court said: "The judgment in the action at law was a bar to this suit. Its recovery concluded all matters which might have been urged as a defence to the policies. A fraudulent purpose in procuring them, subsequently carried into execution, would have been a

good defence. It was, in fact, originally pleaded and afterwards withdrawn. Its' withdrawal did not authorize a suit in another forum for its establishment against the demand of the plaintiff. When an action at law is brought upon a contract, the defendant denying its obligation, either from fraud, payment or release, or any other matter affecting its original validity or subsequent discharge, must present his defence for consideration. A recovery is an answer to all future assertions of the invalidity of the contract by reason of any admissible matter which might have been offered to defeat the action."

The point is likewise well illustrated by the cases of *Fourniquet* v. *Perkins, 7 How. 160; N. P. R. Co.* v. *Slaght, 205 U. S. 122; United States* v. *Cal. & O. Land Co., 192 U. S. 355; Beloit* v. *Morgan, 7 Wall. 619; Cromwell* v. *Sac County, 94 U. S. 351,* which latter case has been followed in this state in *Paterson* v. *Baker, 51 N. J. Eq. (6 Dick.) 49; Clark Thread Co.* v. *William Clark Co., 55 N. J. Eq. (10 Dick.) 658; Mercer County Traction Co.* v. *United Railroads, 64 N. J. Eq. (19 Dick.) 588.* This point would seem to be decisive of the status of the domestic receiver and to be sufficient to justify granting the motion. It may well be that in the receiver's present suit the defendant might plead the former adjudication against him, and it would seem that such a plea, under the authorities above cited, would necessarily prevail. What the practice and procedure on such a plea would be in Colorado we do not know, but it certainly would eventuate in some sort of hearing to determine its validity, and I see no reason why the parties should be put to the delay, trouble and expense of such a hearing. The remedy now sought by this motion goes to the root of the whole matter and obviates the necessity of further expense and delay. •

In addition to the adverse judgment in the Colorado court there is also an adjudication of distinct weight on the same subject-matter in this court. It appears that application was made here in 1895 for an order permitting or directing the receiver to take proceedings to set aside the foreclosure transaction, which proceedings, of course, must have been brought in Colorado, where the property lies; that the matter was referred to William H. Corbin, who inquired into it, and before whom witnesses were

sworn. He made his report to the court; the court refused to make the order sought, which I take to be an adjudication on the exact situation that is now presented.

There are, however, other grounds equally .cogent upon which the decision of this motion may rest. The receiver is an officer of this court; he has certain statutory duties to perform, but he is at all times subject to this court's jurisdiction. He was a party to a suit in Colorado in which an injunction was issued against him enjoining him from doing the very thing which he subsequently did. To allow such a proceeding after it has once been brought to the attention of this court is for this court to allow one of its officers to affirmatively violate an injunction order made by a competent court of a sister state and affirmed by its highest court of appeals. There could be no justification for any such action on the part of this court, and it will not permit itself or its officers to be put in a position of antagonism to final decrees made in foreign jurisdictions, thus violating the spirit of the "full faith and credit" clause of the federal constitution, but more especially as the domestic receiver can only obtain admission to the courts of the foreign state upon the ground of state comity, the extent of which is clearly set forth in *National Trust Co.* v. *Miller 33 N. J. Eq.* (*6 Stew.*) *155; Falk* v. *Janes, 49 N. J. Eq.* (*4 Dick.*) *484,* and *Irwin* v. *Granite State Provident Association, 56 N. J. Eq.* (*11 Dick.*) *244.* It is there stated that independent of statutory provision and simply as a matter of comity, the court will extend its aid to the receiver of a foreign corporation for the purpose of enabling him to get possession of property which should in equity be applied in payment of its debts. Such an attempt was made in the Colorado suit. It failed, and I am constrained to hold that upon this point alone the receiver has exhausted his right to appeal to state comity on this question. It may well be that this objection might be urged in the 'present pending suit, but I make the same remark concerning that suggestion that was made in deciding the first point...

Lastly, it is urged that the receiver is not prosecuting his present suit in good faith on behalf of creditors and stockholders, but is merely lending his name and authority to a scheme devised

by Venner for speculative purposes. The affidavits on this point are meagre and consist principally of innuendo and argument, so that I am unable to say whether the point is well taken in fact or not. If the suit is indeed a mere speculative one, and is being prosecuted as a mere stock jobbing operation, or for the purpose of extorting money, this court ought not to allow its receiver to have any hand in it.

The proceedings in the foreclosure suit which are attacked were wound up and ended nearly twenty years ago, and if the plea of former recovery were not sufficient to oust the jurisdiction, it might be thought that the domestic receiver by his long delay had forfeited all right to take the affirmative action which he has taken in the present suit.

I am, therefore, of the opinion that the domestic receiver should, with all convenient speed, relieve himself of the burden of the prosecution of his present cause of action and cease to be its *magister litis*. There can be no objection, however, to his assisting any interested parties in procuring someone to take his place, or in changing the form of the suit to meet the necessity of his retirement, and to take such time therefor as may be reasonably necessary, and to this end he should perhaps render all assistance that may be reasonably required to reach the end in view.

There is one other branch of the motion which has not yet been mentioned. The petitioner seeks to have the domestic receiver file his account and be discharged from the further performance of his trust. It appears that he has never received any assets, and it would seem useless to continue a receivership which is now over twenty years old and which has not yet brought any benefit or advantage to the company's creditors. When the receiver shall have discharged himself from all duties and obligations in his present pending suit the question of his discharge will then be taken up.