[Civ. No. 10621.  Second Appellate District, Division One.—July 27, 1936.]

ALICE L. CANFIELD, as Executrix, etc., Appellant, v. E. W. SCRIPPS, Trustee, et al., Respondents.

McAdoo, Neblett & Warner, William H. Neblett, John Sobieski and LeRoy P. Lorenz for Appellant.

S. S. Hahn and W. O. Graf for Respondents.

ROTH, J., *pro tem.*—Alice L. Canfield, plaintiff and appellant herein, is the executrix of the estate of Byron Hilton Canfield, deceased, and was appointed as such by the superior

court of this state, in and for the County of Santa Barbara. She was preceded as the legal and official representative of said estate by E. G. Dodge, special administrator, who had been previously appointed by the same court. This action is one whereby plaintiff seeks damages for conversion of stock belonging to the testate, for which conversion she alleges the defendants are responsible.

During his lifetime, deceased pledged the stock in question with E. W. Scripps, trustee, as security for the payment of certain notes in favor of certain of the other defendants. The notes were not paid and approximately eight months after the death of the plaintiff's testate, notice having been given of such purpose to Dodge, special administrator, and others, E. W. Scripps, as trustee, commenced proceedings to sell the stock as a pledge in the state of Washington, which was the domicile of Scripps and the *situs* of the stock. Prior to the sale, so noticed, Dodge, special administrator, together with others (including a special administrator appointed by the state of Washington), filed an action in the state of Washington seeking to enjoin the sale of said stock. The sale was temporarily enjoined, pending the disposition of the Washington action. Thereafter, the Washington action was tried, judgment went against Dodge and his coplaintiffs, and the temporary injunction was dissolved. An appeal was taken to the Supreme Court of Washington and the judgment of the trial court was affirmed. Thereafter, *certiorari* was sought from the Supreme Court of the United States and denied. The Washington judgment is now final. Within a few days after the judgment against Dodge, special administrator, and his coplaintiffs in the Washington trial court, the instant action was commenced by Dodge, special administrator, in the superior court of this state. The trial of this action was temporarily suspended pending the outcome of the appeal from the Washington judgment. (*Dodge* v. *Superior Court,* 139 Cal. App. 178 [33 Pac. (2d) 695, 34 Pac. (2d) 501].) During the pendency of the Washington appeal, the special administration of the instant estate was completed, and Alice L. Canfield, the present plaintiff and appellant, was substituted in the action for Dodge, special administrator. The Washington appeal having been finally disposed of, the instant action went to trial before a jury. Defendants immediately called the Washington judg-

ment to the trial court's attention, but plaintiff insisted, to which insistence the trial court capitulated, that she be permitted to put on a *prima facie* case, in the business of which some eight weeks were consumed. Defendants then introduced the Washington judgment in evidence, whereupon the court, on motion duly made therefor by defendants, instructed the jury to bring in a verdict for defendants. This the jury did, and judgment was entered on the verdict. From that judgment this appeal is before us.

The nature of the primary question involved which, in our opinion, is decisive of this lawsuit, makes it unnecessary to detail anything more of the rather elaborate factual background or to allude to any of the other questions raised. The pivotal question on this appeal is whether the Washington judgment rendered against a special administrator appointed by a California court, whose authority to act would not in the ordinary situation extend outside of the state of California, is *res judicata* and binding upon the special administrator in California, and his successors in interest. We think the Washington judgment is *res judicata* and does bind the present plaintiff.

The general rule applicable to such situations was admirably stated by Mr. Justice Story in *Vaughan* v. *Northup*, 40 U. S. 1, 5, 6 [10 L. Ed. 639, 640, 641]: ''Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, *de jure,* extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and *whatever operation is allowed to it beyond the original grant is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and interests of its own citizens.* On the other hand, the administrator is exclusively bound to account for all the assets which he receives under and in virtue of his administration to the proper tribunals of the government from which he derives his authority; and the tribunals of other states have no right to interfere with or to control the application of these assets, according to the *lex loci.* Hence, it has become an established doctrine that an administrator, appointed in one state, cannot, in his official capacity, sue for any debts due

to his intestate in the courts of another state; and that he is not liable to be sued in that capacity in the courts of the latter, by any creditor, for any debts due there by his intestate. The authorities to this effect are exceedingly numerous, both in England and America; but it seems to us unnecessary, in the present state of the law, to do more than to refer to the leading principle as recognized by this court in *Fenwick* v. *Sears*, 1 Cranch, 259 [2 L. Ed. 101], *Dixon's Exrs.* v. *Ramsay's Exrs.*, 3 Cranch, 319 [2 L. Ed. 453], and *Kerr* v. *Moon*, 9 Wheat. 565 [6 L. Ed. 161]." (Italics ours.)

It is also settled that there is a distinction between the right of a foreign administrator to sue and his *immunity* from suit in a jurisdiction beyond the limits of his domiciliary state. (*Helme* v. *Buckelew*, 229 N. Y. 363 [128 N. E. 216].) In the Helme case, the court, per Cardozo, J., says (p. 217): "I have little doubt that it was part of the *purpose of the statute to remove the disability* which formerly attached to foreign executors and administrators when suing in our courts as plaintiffs. I shall assume, even though it may be unnecessary to decide, that the purpose was to this extent effective. *The removal of a disability, as distinguished from an immunity, comes properly within the field of comity.* (*Vaughan* v. *Northup, supra.*) It is when we pass to that part of the statute which deals with the liability of foreign representatives as defendants that difficulties begin." (Italics ours.)

The statute referred to in the Helme case is section 1836 (a) of the Code of Civil Procedure of the state of New York, enacted in 1911. By its terms an executor or administrator of a foreign country or another state was permitted to sue and made liable to suit (if personally served) in the state of New York. Commenting further on said statute, the New York court said, at page 219: "I think the true view must therefore be that the statute *removes disabilities, but does not terminate immunities.* These are what they always were. Foreign administrators and executors may sue in the same manner as nonresidents, *for comity may enlarge the measure of their rights as plaintiffs without encroaching upon the jurisdiction of other courts, or overstepping the limits of our own.* Foreign administrators and executors may be sued in the same manner as nonresidents, but only when the subject-matter subjects them to the jurisdiction; for comity,

though it may enlarge their rights, cannot unless it is also the comity of the domicile, enlarge their liabilities, and there is nothing in the statute that unmistakably reveals a purpose to assume, in disregard of comity, a jurisdiction which the accepted principles and usages prevailing between different sovereignties have heretofore condemned.'' (Italics ours.)

█ It is clear on authority, from what has been thus far said, that as a matter of right a special administrator cannot sue in a jurisdiction other than the one of his appointment, because he is under a *disability* to state a cause of action in himself as special administrator. Also, that he cannot be sued in a jurisdiction other than the one in which he is appointed, because he is *immune* from such suit.

The Helme case points out, however, that on principles of comity, the *disability* may be removed by statute. It goes on to say that except within those narrow limits already defined by existing rules in equity, *immunity against* suit cannot be toyed with by the kind of statute there in question.

Since we have not been advised of any statute in the state of Washington similar to the New York statute, construed in the Helme case, and since we know of none, the sole remaining point to decide is whether the disability of plaintiff's predecessor in interest to sue as a party plaintiff in Washington on principles of comity is recognized in the law, even in the absence of such statute. █ There is considerable persuasive authority that there is a well-known and frequently applied principle of comity which, in the absence of demurrer or other suitable objection to the capacity of a foreign administrator to bring suit, will permit the bringing of suit. It should be first mentioned, however, that it has been held quite generally that the right of a foreign administrator to maintain an action involves only the question of capacity to sue. The objection, therefore, to such suit by a foreign administrator must be raised by demurrer, answer or in some other suitable manner. (*Anthes* v. *Anthes*, 21 Idaho, 305 [121 Pac. 553]; *McGrath* v. *West End etc. Land Co.*, 43 Idaho, 255 [251 Pac. 623]; *Gregory* v. *McCormick*, 120 Mo. 657 [25 S. W. 565]; *Wilson* v. *Wilson*, 26 Or. 251 [38 Pac. 185]; *Farmers Trust Co.* v. *Bradshaw*, 137 Misc. 203 [242 N. Y. Supp. 598]; *Dearborn* v.

*Mathes*, 128 Mass. 194; *Dahlstrom* v. *Walker*, 33 Idaho, 374 [194 Pac. 847]; *Pope* v. *Waugh*, 94 Minn. 502 [103 N. W. 500]; *Berlin* v. *Sheffield etc. Co.*, 124 Ala. 322 [26 So. 933]; *Hodges* v. *Kimball*, 91 Fed. 845.)

The general rule is stated in Pomeroy's Code Remedies, fifth edition, page 109, to be as follows:

"Although in general a foreign executor or administrator cannot sue as such in the courts of another state or country than that in which he was appointed, yet if the objection is not raised by answer or demurrer, it is waived under the codes of procedure; that is, the objection goes simply to the parties' capacity to sue and not to the cause of action set up in the complaint or petition."

Defendants in the Washington case raised no objection whatsoever to the right of Dodge, special administrator, to maintain the Washington action.

It has been specifically held that, in the absence of statutory authority, where there is no objection, a foreign administrator may maintain a suit in a jurisdiction other than the one of his appointment. (*Palm's Admr.* v. *Howard*, 31 Ky. Law Rep. 316 [102 S. W. 267]; *Lackner* v. *Mc-Kechney*, 252 Fed. 403; *Davis* v. *Connelly's Exrs.*, 43 Ky. 136; *Newark Savings Inst.* v. *David Jones' Exrs.*, 36 N. J. Eq. 406.)

In principle there is little distinction between a special administrator, a receiver in equity, and a trustee, with respect to the capacity of any of such representative parties to bring suits in states other than the state in which they receive appointment, and from which they derive authority. It has been held in a number of cases involving receivers and trustees that the principle of comity applies. (*Iowa & California Land Co.* v. *Hoag*, 132 Cal. 627 [64 Pac. 1073]; *Wright* v. *Phillips*, 60 Cal. App. 578 [213 Pac. 288]; *Smith* v. *Shepler*, 8 Cal. App. (2d) 717 [48 Pac. (2d) 999]; *Converse* v. *Hamilton*, 224 U. S. 243 [32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292]; *Continental Oil Co.* v. *American Cooperative Assn.*, 31 Wyo. 433 [228 Pac. 503]; *Denver City Water Works Co.* v. *American Water Works Co.*, 81 N. J. Eq. 139 [85 Atl. 826].)

In the case of *Smith* v. *Shepler, supra,* the court says at page 570: "Receivers appointed under another jurisdiction may be permitted to sue in California as a matter of comity,

wherever the rights of local creditors are not prejudiced.'' In the Hoag case, *supra,* the court says at page 629: ''The questions upon this appeal may be thus stated:—1. May a trustee, as such, commence and maintain an action in a foreign jurisdiction? or is his power and authority so to do coterminous with the jurisdiction or law to which he owes his appointment? . . .

''The early rule denied to such officers any standing in a foreign court, but the courts, of late, influenced by a spirit of comity, have inclined to much more liberal views, and it may fairly be said that the prevailing doctrine permits the maintenance of such actions by foreign receivers and like officers, where the rights of domestic creditors are not interfered with. (*Toronto etc. Trust Co.* v. *Chicago etc. R. R. Co.,* 123 N. Y. 37 [25 N. E. 198]; *Comstock* v. *Frederickson,* 51 Minn. 350 [53 N. W. 713]; *Boulware* v. *Davis,* 90 Ala. 207 [8 So. 84, 9 L. R. A. 601]; *Winans* v. *Gibbs etc. Mfg. Co.,* 48 Kan. 777 [30 Pac. 163]; *Hurd* v. *Elizabeth,* 41 N. J. L. 1; *Wilson* v. *Keels,* 54 S. C. 545 [32 S. E. 702, 71 Am. St. Rep. 816]; *Gilman* v. *Ketcham,* 84 Wis. 60 [54 N. W. 395, 36 Am. St. Rep. 899, 23 L. R. A. 52]; *Sands* v. *Greely & Co.,* (2 C. C. A.) 88 Fed. 130 [31 C. C. A. 424]; *Parker* v. *Stoughton Mill Co.,* 91 Wis. 174 [64 N. W. 751, 51 Am. St. Rep. 881]; Alderson's Beach on Receivers, sec. 665; Smith on Receiverships, 165; High on Receivers, sec. 241].) The modification of the rule, as has been said, rests upon the principle of comity,—a principle which the court was reluctant to apply in this particular case, by reason of the fact that the supreme court of Iowa, in *Ayres* v. *Siebel,* 82 Iowa, 347 [47 Pac. 989], had refused to recognize the principle, and denied to a foreign trustee the right to maintain an action in its courts.

''Mutuality of operation is of the essence of comity, and therefore, since a California trustee would not be permitted to maintain his action in the courts of Iowa, little reason could be perceived for the invocation of the principle of comity to permit an Iowa trustee to maintain a like action in the courts of this state. In the later case of *Hale* v. *Harris,* 112 Iowa, 372 [83 N. W. 1046], the Supreme Court of Iowa evinces a disposition to modify its views in this regard. But, apart from that, we think that the rule permitting the maintenance of such actions in our courts, where

the rights of domestic creditors are not interfered with, is both just and reasonable, and should be enforced without distinction; and therefore, regardless of the rule which may prevail in Iowa, and of the fact that the trustee in this case is a trustee under the laws of Iowa, as we are not hampered by the principle of *stare decisis,* and as the rights of domestic creditors are not involved, we hold that he may, as a matter of comity, maintain this action.''

The conversion alleged in the instant action is bottomed upon an alleged illegal sale of certain securities in the state of Washington. The injunction suit in the state of Washington was predicated upon the illegality incident to the same projected sale of the same securities. Both actions involve the same sale, the same securities, the same debt, the same estate, the same subject-matter, the same parties and the same issues. The only differences are in the nature of the relief prayed for and the designation of the nominal plaintiff.

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 21, 1936.