[Civ. Nos. 9732, 9743. Fourth Dist., Div. One. July 27, 1970.]

CAROLINE KROPP, Plaintiff, Cross-defendant and Appellant, v.
STERLING SAVINGS & LOAN ASSOCIATION,
Defendant and Cross-complainant;
FIRST NATIONAL BANK OF ARIZONA,
Cross-complainant and Respondent.

(Consolidated Cases.)

## COUNSEL

George W. Rochester and Ruanne N. Maines for Plaintiff, Cross-defendant and Appellant.

No appearance for Defendant and Cross-complainant.

Rutan & Tucker and Richard A. Curnutt for Cross-complainant and Respondent.

## OPINION

**AULT, J.**—Caroline Kropp appeals from an adverse judgment in two actions she instituted to recover the proceeds of two trust accounts in Sterling Savings and Loan Association, located in Orange County. The cases were consolidated by order of the Superior Court of Orange County, and identical findings of fact, conclusions of law and judgments were filed and entered in both actions. Separate appeals were filed which this court has ordered consolidated.

On February 17, 1964, Edward and Maude Levine, husband and wife, each deposited $10,000 in separate trust accounts in the Sterling Savings and Loan Association. Edward designated Maude as the beneficiary of the trust account he opened, and Maude made Edward the beneficiary of her account. Both Edward and Maude executed identical printed form instruments on the reverse side of the account signature cards entitled "Declaration of Trust," which recited: "I hereby declare said investment certificate account numbered and designated on the reverse side hereof, is, and any and all payments made thereon by me at any time in the future shall be, held by me in trust for Beneficiary above named, reserving to myself, however, any interest not credited to said investment certificate account, and the right at any time to revoke said trust, in whole or in part, by withdrawing said account from the Association, or by executing and delivering to the Association a notice of intention to withdraw, the whole of said account, or the part thereof as to which I desire to revoke said trust.

"In the event of my death, the Association may pay the whole or any part of said investment certificate account to Beneficiary (if more than one, equally, and if any Beneficiary be deceased, then equally to the survivors or survivor of them). If no Beneficiary be designated hereon, or if no Beneficiary should be living at the time of my death, said Association may pay the whole or any part of said account to my personal representatives."

Shortly after opening the trust accounts, the Levines moved to Arizona. Maude Levine died intestate in Pima County, Arizona, December 7, 1965. Edward Levine died intestate in Pima County, Arizona, August 19, 1967. Edward left no heirs. Maude's sole surviving heir was her sister, appellant Caroline Kropp. The trusts were not changed, altered or modified by the Levines during their lifetimes. No withdrawals were made from either account, but interest checks were sent by the savings and loan to the Levines and cashed by them. Edward did not notify the savings and loan association of Maude's death, and he cashed several interest checks made out to her after her death.

### Proceedings in the Superior Court

On October 24, 1967, appellant filed an action against Sterling Savings and Loan Association (Sterling) entitled "Complaint to Enforce Self-Declared Trust," claiming the $10,000 which had been deposited in trust for Maude by Edward. Sterling answered the complaint and filed a cross-complaint in interpleader, naming appellant and the First National Bank of Arizona (the Bank), as cross-defendants. Sterling's cross-complaint alleged both appellant and the Bank claimed the funds in the account, the latter as the administrator of the estates of Edward and Maude Levine.

The Bank answered the cross-complaint in interpleader and, in turn, cross-complained against appellant for declaratory relief, alleging a dispute between it and appellant over the funds in the account, and asked the court to order the funds paid to the Bank.

On January 23, 1968, appellant moved to dismiss the Bank's cross-complaint for declaratory relief, contending the Bank, as a foreign administrator, could not sue in the California court and the court was without jurisdiction to hear the cross-complaint. The motion to dismiss was denied "without prejudice to filing other similar broader proceedings." Appellant then moved for summary judgment. The motion was supported by affidavits which indicated the Levines had expressed an intention the funds in the account should go to appellant after their deaths. Although appellant, in the notice of motion for summary judgment, and in the points and authorities filed in support of the motion, raised the issue of jurisdiction and the Bank's capacity to sue, at the hearing itself appellant's counsel waived the issue of capacity and requested the court to rule on the motion for summary judgment on the merits. The motion for summary judgment was denied. Thereafter, appellant answered the Bank's cross-complaint and did not raise the defense of the Bank's lack of capacity to sue. By agreement, Sterling deposited the funds from the account with the clerk of the court and was dismissed from the action. The matter, together with appellant's second suit, was submitted to the court on an agreed statement

of fact. The court determined appellant had no right or interest in the account, ruled the funds were an asset in the estate of Edward Levine, and ordered them paid to the Bank as administrator.

Meanwhile, on January 8, 1968, appellant had filed a second action against Sterling entitled, "Complaint re Tentative Trust," claiming the $10,000 which Maude had deposited, naming Edward as beneficiary. It alleged an oral agreement between Maude and Edward to the effect that if Maude predeceased Edward, the funds in the account would pass to Maude's heirs. It also alleged Edward had disclaimed any right to the account by failing to notify Sterling of Maude's death and by endorsing Maude's name on dividend checks which were mailed after her death. An amended complaint was filed which did not materially change the proceeding. Sterling answered the amended complaint and again cross-complained in interpleader, alleging the funds in this account were also claimed by the Bank as administrator of the estates of Edward and Maude Levine.

On May 2, 1968, after the court had denied her motion for summary judgment in the first action, appellant answered the Bank's cross-complaint. She did not plead the Bank's lack of capacity to sue as a defense. In the second action filed, appellant did not raise the issue of the Bank's capacity to sue by demurrer, motion or pleading of any kind. Sterling was granted permission to deposit the funds from this account with the clerk of the court and was dismissed from the action.

On the Bank's motion, the two cases were consolidated. The second case was also submitted to the court for decision on an agreed statement of fact (slightly different from the statement in the first action). The court found appellant had no right or interest in the account, ruled the account was an asset of the Estate of Edward Levine, and ordered the funds in the account paid to the Bank.

 *As a foreign administrator, the Bank's lack of capacity to sue for declaratory relief in a California court was not jurisdictional, and the record supports the trial court's finding the defect had been waived by appellant in both cases.*

Appellant first contends the court had no jurisdiction to hear and determine the issues raised by the Bank's cross-complaints, because the Bank, as a foreign administrator, had no right to sue in California. Primarily she contends the defect is jurisdictional and could not be waived; secondarily, she asserts there was no waiver in any event. Both contentions are without merit.

Code of Civil Procedure, section 1913, provides the authority of a guardian, executor or administrator does not extend beyond the jurisdiction of the government which invested him with his authority. ■ However, the disability to sue created by the code section relates to capacity to sue, not to jurisdiction. The disability is waived unless the issue is properly raised in the trial court. (*Canfield* v. *Scripps*, 15 Cal.App.2d 642, 646 [59 P.2d 1040]; *Siegal* v. *Superior Court*, 203 Cal.App.2d 22, 27 [21 Cal.Rptr. 348]; *Farmers & Merchants Trust Co.* v. *Madeira*, 261 Cal.App.2d 503, 513-514 [68 Cal.Rptr. 184].) ■ If want of capacity appears by the complaint, the defect should be raised by demurrer, otherwise by answer. If not raised by demurrer, answer or in some other suitable manner, the defect is waived, "clearly showing the matter is not jurisdictional." (*Siegal* v. *Superior Court, supra,* 203 Cal.App.2d 22, 27.) (See also *Danziger* v. *Peebler,* 88 Cal.App.2d 307, 310 [198 P.2d 719].) Appellant's contention the Bank's disability to sue was jurisdictional and could not be waived is clearly contrary to numerous California decisions and is untenable.

■ The trial court's finding appellant waived the defect of the Bank's lack of capacity to sue is supported by the record. As to the second of the two actions filed, the defect was not raised in any manner, not by demurrer (although the Bank's status as a foreign administrator clearly appeared in the cross-complaint), not by motion, and not by answer. We think there was a clear waiver of the Bank's lack of capacity to sue in that action.

As to the first action, appellant did not demur to the cross-complaint although it appeared the Bank was suing as a foreign administrator. Instead she filed a motion to dismiss, which the court properly denied "without prejudice to filing other similar broader pleadings."[1] While appellant again raised the defense of lack of capacity to sue in her motion for summary judgment, her counsel withdrew the issue at the time the motion was heard and specifically requested the court to decide the motion on the merits. Thereafter she filed her answer to the cross-complaint and did not plead the defense.

■ Lack of capacity to sue is a plea in abatement. It is not favored in the law, because it does not reach the merits of the controversy. It should be raised at the first opportunity—by demurrer if it appears on the face of

---

[1]Since the statutory provisions for summary judgment were adopted, considerable doubt exists as to the continued availability of the non-statutory so-called "speaking motion" to dismiss. (See *Pianka* v. *State of California,* 46 Cal.2d 208, 211-212 [293 P.2d 458]; *Lerner* v. *Ehrlich,* 222 Cal.App.2d 168, 171 [35 Cal.Rptr. 106].) In any event, the motion to dismiss was not an appropriate or suitable vehicle to reach the defect of lack of capacity to sue under the circumstances of this case, a defect which was not fatal, or jurisdictional, and which was subject to correction. (2 Witkin, Procedure, pp. 1500-1504; *Siegal* v. *Superior Court, supra,* 203 Cal.App.2d 22, 27-28.)

the complaint, or by answer if it does not. ■ In this instance, appellant did not raise the issue by either demurrer or answer although she had the opportunity to do so. On the one occasion the issue was effectively raised it was withdrawn. Under the circumstances, we think the trial court and opposing counsel were justified in concluding the defense of lack of capacity to sue had been waived.

■ *The trial court correctly ruled the proceeds of the trust account established by Edward Levine, naming Maude Levine as beneficiary, was an asset of the Edward Levine Estate. It also correctly concluded the appellant, Caroline Kropp, had no interest in the funds represented by that account.*

Pertinent to the above conclusion, is that part of the trust instrument in which Edward Levine provided: "In the event of my death the Association may pay the whole or any part of said investment certificate account to Beneficiary (if more than one, equally, and if any Beneficiary be deceased, then equally to the survivors or survivor of them). If no Beneficiary be designated hereon, or, if no Beneficiary should be living at the time of my death, said Association may pay the whole or any part of said account to my personal representatives."

Maude Levine, the beneficiary of the trust, predeceased Edward Levine. By the terms of the trust, there being no living beneficiary at the time of Edward Levine's death, the funds passed to his personal representatives.

■ The term "personal representatives" ordinarily means executors or administrators, but it may have a broader meaning. Black's Law Dictionary (4th ed. 1951), at page 1466 defines "Personal Representatives" as: "Executors and administrators of person deceased; but it may have a wider meaning, according to the intention of the person using it, and may include heirs, next of kin, descendants, assignees, grantees, receivers, and trustees in insolvency." ■ Since appellant is not a blood relative of Edward Levine, she is neither his heir, next of kin nor descendant. (The agreed statement of facts submitted to the court provides: "Mr. Levine had no living heirs to any degree.") Irrespective of the definition of "personal representatives" which the court accepts, the funds are properly a part of the estate of Edward Levine. If we interpret the term to mean executors or administrators, the fund is properly paid to the Bank. If we accept the definition of "personal representatives" as meaning next of kin, heirs or descendants, the funds would still be payable to Edward Levine's estate since he died without leaving heirs, next of kin or descendants. Appellant is neither a beneficiary of the trust nor a representative of Edward Levine and is not entitled to the funds in any event.

Relying on *Sherman* v. *Hibernia S. & L. Soc.*, 129 Cal.App. Supp. 795 [20 P.2d 138] and *Randall* v. *Bank of America*, 48 Cal.App.2d 249 [119 P.2d 754], appellant asserts Maude Levine acquired a vested interest in the trust which survived her death and passed to appellant, as Maude's heir, when Edward Levine died without disturbing the account. In the cases relied upon, the beneficiaries of the trust account predeceased the depositor, who retained a life interest with power to revoke. The court held, in each instance, the funds passed to the beneficiary's heirs upon the death of the depositor. However, in both *Sherman* and *Randall* the trust instrument made no disposition of the funds in the event the beneficiary predeceased the depositor. In neither did the instrument specifically provide, as it does here, for the funds to be paid to the depositor's personal representatives upon that contingency.

■ The applicable rule is succinctly stated in Scott, Trusts, (3d ed.) section 128.8, page 1046: "Where a future interest under a trust is given to a beneficiary, and the beneficiary dies before the time fixed for enjoyment of his interest, the question arises whether his interest ceases, or whether it passes on his death under his will or by intestate succession. The answer depends on whether on a proper construction of the terms of the trust the beneficiary's interest is conditional on his survival. It is immaterial whether the condition, if any, is a condition precedent or a condition subsequent; it is immaterial whether the interest of the beneficiary is contingent on his survival or whether it is vested but subject to be divested if he should not survive. In any case, if the interest is dependent on his survival, it ceases on his death. If, on the other hand, his interest is not dependent on his survival, it passes on his death under his will or by intestacy."

■ Under the trust instrument, Maude Levine's interest in the trust account is conditioned upon her survival of Edward. It is immaterial whether her interest is considered as one which did not vest unless she survived Edward, or a vested interest, which divested when she failed to survive him. In either event she had no interest in the trust account when Edward died and the account passed to his personal representatives.

■ Appellant contends the trial court erred in construing the term "may" as used in the trust instrument as mandatory.[2] We believe the conclusion was compelled by both reason and law. The instrument first provides, if Edward dies, the association "may" pay the funds in the account to Maude, the beneficiary. In the next sentence it states, if the beneficiary is not living at Edward's death the association "may" pay the

[2]Since the terms of the trust agreements are identical, appellant makes this same contention of error in connection with the second trust. Our discussion of the issue is equally applicable to the trust account established by Maude Levine with Edward Levine as beneficiary.

funds in the account to Edward's personal representatives. It is inconceivable to us that discretion in these matters was intended to be vested in Sterling by the use of the term "may." Had Maude survived Edward, it is obvious the parties intended her to have absolute interest to the funds in the account and that Sterling would be obligated to pay them to her. The agreement was not tailored to meet the individual needs of Edward and Maude. It is the printed form agreement which appears on the reverse side of Sterling's trust account signature cards. When such agreements are signed we can only conclude, as did the trial court, the parties intended the funds in the account to pass to the named beneficiary upon the depositor's death and if no beneficiary survived the depositor, to his personal representatives.

■ Ordinarily "may" denotes the permissive rather than the mandatory but it is often construed to the contrary. "Regardless of the instrument, however, whether constitution, statute, deed, contract or whatnot, courts not infrequently construe 'may' as 'shall' or 'must' to the end that justice may not be the slave of grammar." (Black's Law Dict. (4th ed. 1951) p. 1131.) (See also *Pennington* v. *Pennington Sons,* 170 Cal. 114, 115 [148 P. 790]; *Stabler* v. *El Dora Oil Co.,* 27 Cal.App. 516, 522-523 [150 P. 643].) ■ The trial court correctly concluded the word "may" as used in the trust instrument was mandatory rather than permissive.

■ The agreed statement of facts, upon which the matter was submitted for decision, included a stipulation an affidavit signed by Virgil K. Kimbell could be received in evidence "in lieu of personal appearance at trial" and subject to the Bank's objection the evidence was irrelevant and immaterial to the issues in the case. In substance, the affidavit stated Mr. Kimbell saw and talked to Edward Levine in July 1967, after Maude's death and shortly before Edward died. At that time, Edward stated he knew he had no heirs and he and Maude had arranged their affairs "so that everything we have will go to the Kropps." Appellant contends the court erred because it did not interpret the trust instrument to bring about this result and did not conclude the term "personal representatives" as used in the trust instrument included appellant.

The issue before the court was what was intended by what was said in the trust instrument, not what Edward intended with respect to the disposition of his property in 1967. ■ In construing a trust instrument, the court "must if possible ascertain and effectuate the intention of the trustor . . . as expressed by the language of the instrument itself." (*Lombardi* v. *Blois,* 230 Cal.App.2d 191, 197 [40 Cal.Rptr. 899].) ". . . the guiding principle must be the intention of the settlor—his intention as ex-

pressed. Not, What did he intend to say? but, What did he intend by what he did say? must be the test." (*Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629, 642 [218 P. 14].) The statement made by Edward Levine in 1967 does not purport to explain what he meant by the term "personal representatives" in the trust instrument he signed in 1964.

 Moreover, extrinsic evidence which legitimately bears on intent is admissible only when the trust instrument is unclear or ambiguous (*Pagel* v. *Shipp,* 68 Cal.App.2d 12, 20 [155 P.2d 878]). The provision the funds in the account were to be paid to Edward's personal representatives, in the event Maude failed to survive Edward, is not ambiguous in a manner which benefits appellant. If the term "personal representatives" is ambiguous, it is only so to the extent it may, on some occasions, be given a broader meaning than executors or administrators and include heirs, next of kin and descendants. But appellant, who was unrelated to Edward Levine, does not come within its meaning in any event. To the extent the term "personal representatives" excludes appellant, it is completely unambiguous. It follows she may not, under the claim of ambiguity, and in an effort to bring herself within its definition, introduce extrinsic evidence to ascribe a meaning to the term beyond any ambiguity which exists in it. The trial court properly rejected the extrinsic evidence contained in the affidavit as it was irrelevant and immaterial to the proper construction of the trust instrument.

 *The trial court's determination the funds in the trust account established by Maude Levine, with Edward Levine as beneficiary, were an asset of the estate of Edward Levine is supported by substantial evidence.*

This trust instrument also provided: "In the event of my death the Association may pay the whole or any part of said investment certificate account to Beneficiary. . . ." It is clear from the agreed facts Edward Levine survived Maude. By the terms of the instrument the trust vested in Edward and became his property free of the trust. Appellant contends the trust did not vest in Edward because he did not accept its benefits during his lifetime. However, the trial court found: "17. With regard to Trust No. 14945, Sterling Savings & Loan Association was not notified of the death of Maud [*sic*] W. Levine and continued to issue checks for interest in her name. These checks were endorsed 'Maude W. Levine' and were cashed by Edward E. Levine.

"18. Edward E. Levine never refused to accept the benefit of Trust No. 14945.

"19. Edward E. Levine knew of the existence of Trust No. 14945 since its creation.

"20. Edward E. Levine, after the death of his wife, Maude W. Levine, accepted the benefit of Trust No. 14945."

The findings are supported by substantial evidence and under well established appellate rules are binding upon this court. Although the agreed statement submitted makes no mention of the fact Edward received, endorsed, and cashed several interest checks from this account made out to Maude, after Maude's death, appellant unequivocally alleged this to be so in her complaint against Sterling and frankly concedes it to be so in one of her opening briefs. She is now in no position to urge the finding is erroneous in this respect.

Appellant again relies on two affidavits submitted with the agreed statement in which the Levines are quoted as having stated it was their intention the funds in this account would go to the Kropps if Maude died before Edward. Contrary to her contention, respondent's stipulation the affidavits could be received in evidence, "in lieu of personal appearance at trial," was not a concession the statements contained in the affidavits were true. The most that can be said of this evidence is that it conflicted with the evidence Edward, in fact, accepted the benefit of the trust when he endorsed and cashed interest checks paid on the account after Maude's death. Under California law, it is presumed a gift beneficial to the donee is accepted. (*Estate of Kalt,* 16 Cal.2d 807, 813 [108 P.2d 401, 133 A.L.R. 1424]; *Herman* v. *Mortensen,* 72 Cal.App.2d 413, 418-419 [164 P.2d 551]; *Blackburn* v. *Drake,* 211 Cal.App.2d 806, 816 [27 Cal.Rptr. 651].) Whether such presumption is regarded as one defined in Evidence Code, section 603 (presumption affecting the burden of producing evidence), or as one contemplated by Evidence Code, section 605 (presumption affecting the burden of proof), substantial evidence supports the trial court's finding Edward did not reject the benefits of the trust and did, in fact, accept its benefits.

 *Appellant's contention the court erred in consolidating the two actions for trial and that such consolidation resulted in prejudice is without merit.* Code of Civil Procedure, section 1048, provides: "An action may be severed and actions may be consolidated, in the discretion of the court, whenever it can be done without prejudice to a substantial right."

In 2 Witkin, California Procedure (1954) page 1134, it is stated: "If the causes of action could have been joined, it is usually appropriate to order a complete consolidation, the separate actions becoming a single action, the separate pleadings being treated as part of one set, and a single verdict or judgment being given. In other words, the actions are viewed as if the same plaintiff or plaintiffs had filed a single complaint on joined causes of action against the same defendant or defendants."

In the instant case, the court properly ordered consolidation of joinable causes of action involving the same parties, and the cases were properly tried as one case with one judgment and one set of findings of fact and conclusions of law. Appellant has failed to demonstrate any prejudice resulting from the consolidation.

Appellant has not contended the funds in either of the two trust accounts, or any part thereof, were payable to her by virtue of the provisions of Probate Code, sections 228 or 229. We do not believe she could make such a contention within the context of this case. In the event the State of Arizona has similar statutes, we wish to make it clear we have not considered the applicability of these code sections. We have been concerned with property subject to a trust, not with the disposition of property in an intestate estate.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied August 10, 1970, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1970.