[Civ. No. 31030. Fourth Dist., Div. One. Feb. 24, 1984.]

MITSUI MANUFACTURERS BANK, Plaintiff and Appellant, v.
KAREN TUCKER, as Administratrix, etc., Defendant and Respondent.

**COUNSEL**

Mink, Neiman & Kinney and Michael E. Kinney for Plaintiff and Appellant.

Monbleau, Vermeire & Turley and Timothy W. Evens for Defendant and Respondent.

**OPINION**

**BROWN (Gerald), P. J.**—Plaintiff Mitsui Bank appeals an order quashing service of summons on defendant Karen Tucker, administratrix of the estate of Oral W. Tucker, Jr., deceased, for lack of personal jurisdiction.

But for the fortuity of death, the propriety of California jurisdiction would be unchallenged.

On July 6, 1982, California residents Oral Tucker and his business associate, William Aubry, borrowed $30,000 from Mitsui's San Diego, California office. Oral lived in San Diego, his principal place of business was in San Diego, and he intended to use the loan money for that business in California. The loan was to be repaid in San Diego.

When Oral died on September 7, 1982, his wife Karen, who had moved from California to Arizona the previous week, was appointed administratrix of his estate in Maricopa County, Arizona. Mitsui filed a creditor's claim with the Arizona court for the balance on the note, but it was denied for procedural reasons. Mitsui then sued Karen in her representative capacity in San Diego County Superior Court. Karen appeared specially in the San Diego proceeding, asking the court to quash service of summons (Code Civ. Proc.,[1] § 418.10) on the ground, among others, that California did not have personal jurisdiction over her. The superior court quashed service for lack of personal jurisdiction, stating "there is no suable entity within the jurisdiction of this Court in connection with the potential liability of the estate of Oral W. Tucker, Jr."

██ Mitsui contends the court erroneously quashed service of summons based upon an atavistic common law concept: A foreign personal representative lacks capacity to bring, and is immune from, lawsuits outside the state of his appointment (*Canfield* v. *Scripps* (1936) 15 Cal.App.2d 642, 646 [59 P.2d 1040]; Rest., Conf. of Laws, § 512). ██ Foreign representative immunity from suit is no longer the general rule. Rather, the modern rule is: "An action may be maintained against a foreign executor or administrator upon a claim against the decedent when the local law of the forum authorizes suit in the state against the executor or administrator and (a) suit could have been maintained within the state against the decedent during his lifetime because of the existence of a basis of jurisdiction other than mere physical presence." (Rest.2d Conf. of Laws, § 358.) ██ Mitsui correctly asserts "suit could have been maintained" against Oral, because he had ample minimum contacts with California: He entered into a California contract, resided there, and ran a California business (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057]). It further contends the "local law of the forum authorizes suit" by means of section 410.10, which states: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." ██ While this statute

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

does not specifically authorize suits against personal representatives,[2] the Legislature passed section 410.10 to enable courts to exercise the broadest possible jurisdictional authority consistent with the constitution (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322]). Taking jurisdiction of foreign representatives when their decedents had adequate minimum contacts with the forum has repeatedly been held constitutional (see, e.g., *Brooks* v. *National Bank of Topeka* (8th Cir. 1958) 251 F.2d 37; *Rosenfeld* v. *Hotel Corp. of America* (1967) 20 N.Y.2d 25 [281 N.Y.S.2d 308, 228 N.E.2d 374]; Rest.2d Conf. of Laws, § 358), and finding such jurisdiction is not encompassed by section 410.10 would contravene clear legislative intent.

Karen contends even if jurisdiction over her is constitutional, section 1913 overrides section 410.10's broad jurisdictional grant. Section 1913 (enacted in 1872) reads in pertinent part: "The effect of a judicial record of a sister state is the same in this state as in the state where it was made, except that . . . the authority . . . of an executor or administrator, does not extend beyond the jurisdiction of the government under which such person was invested with authority." This statute codified a common law rule "that an executor or administrator, as such, has no power which he can employ extraterritorially." (*Lewis* v. *Adams* (1886) 70 Cal. 403, 411 [11 P. 833].) Section 1913 has been termed not a jurisdictional statute (*Farmer & Merchants Trust Co.* v. *Madeira* (1968) 261 Cal.App.2d 503, 513-514 [68 Cal.Rptr. 184]), but rather a statute creating an incapacity in a foreign representative to sue in California without the defendant's consent (*Kropp* v. *Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1041 [88 Cal.Rptr. 878], citing *Canfield* v. *Scripps, supra,* 15 Cal.App.2d 642, 646.) Although dicta in some cases state the statute also grants immunity from suit to foreign representatives (e.g., *Mayer* v. *Willing* (1961) 196 Cal.App.2d 379, 381 [16 Cal.Rptr. 476, 94 A.L.R.2d 157]), no case has applied the statute to prohibit a Californian from suing a foreign representative.

Even if the statute as originally enacted immunized foreign representatives, the Legislature abridged such immunity in 1959 when it enacted Vehicle Code section 17452 (nonresident motorists causing accidents in California, or their personal representatives, subject to long-arm jurisdiction of

---

[2] Numerous states have statutes which by their express terms authorize suits against foreign representatives; however, these states' long-arm statutes delineate specific areas in which their courts may assert jurisdiction, unlike California's broadly worded statute. (See, e.g., N.M. Ann. Stat. § 45-4-302 (1978 ed.); Ohio Rev. Code Ann., § 2113.70 (1976 ed.) p. 366; Okla. West's Ann. Stat. (1965 ed.) tit. 58, § 262; N.J. Stats. Ann., § 3A:2A-62 (West Supp. 1983); S.D. Ann. Codified Laws, § 30-15-5 (1976 ed.); N.D. Cent. Code, § 30.1-25-02 (1974 ed.).) See generally Uniform Probate Code section 162 (Am.Jur.2d, New Topic Service); Restatement Second Conflict of Laws, section 358 and comments.

California court), and eliminated it in 1969 by enacting section 410.10. This conclusion is consistent with the modern jurisdictional trend away from artificial immunity and with California's sound public policy of protecting California creditors by providing them with a convenient forum in which to adjudicate their claims (*Robertson* v. *United States Nat. Bank* (1965) 235 Cal.App.2d 63, 66 [44 Cal.Rptr. 871]). Such protection is particularly crucial where, as here, the decedent left no California assets, so the usual method of protecting California creditors—ancillary administration—is unavailable.

 For these reasons, Karen Tucker, as administratrix of Oral Tucker's estate, is subject to personal jurisdiction in California.

The order is reversed.

Cologne, J., and Staniforth, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 25, 1984.