[Civ. No 887. Fifth Dist. Apr. 23, 1968.]

FARMERS AND MERCHANTS TRUST COMPANY OF CHAMBERSBURG, as Executor, etc., et al., Plaintiffs and Appellants, v. HERNLEY L. MADEIRA, Defendant and Respondent.

504

Kronick, Moskovitz & Vanderlaan and Edward J. Tiedemann for Plaintiffs and Appellants.

Colley & McGhee and Nathaniel S. Colley for Defendant and Respondent.

GARGANO, J.—This action was initially brought in the Superior Court of Sacramento County by Grace E. Cudlipp to enforce a child support order of the Court of Oyer and Terminer and Quarter Sessions of the Peace of Lancaster County, Pennsylvania. However, Mrs. Cudlipp died during the pendency of the action, and the executors of her last will and testament were substituted in her place. Subsequently, the cause was submitted to the trial court for decision on an agreed statement of facts, and the court granted judgment for the defendant. The court concluded that the Pennsylvania support order "is not a final judgment of a sister state entitled to full faith and credit." This appeal followed.

The agreed statement of facts reads as follows:

"I

Plaintiff and defendant were married September 17, 1938, in Chambersberg, Franklin County, in the Commonwealth of Pennsylvania.

"II

On or about May 19, 1946, a son, Frederick Lee Madeira was born to this marriage.

"III

On or about February 21, 1947, plaintiff and defendant were divorced in Lancaster, Lancaster County, in the Common-

wealth of Pennsylvania, and aforesaid decree made no provision for child support.

"IV

Subsequent to said divorce plaintiff married one Charles L. Cudlipp and is now known as Grace E. Cudlipp.

"V

At the June 1946 term or session of the Court of Oyer and Terminer and Quarter Sessions of the Peace for the County of Lancaster, in the Commonwealth of Pennsylvania, plaintiff filed a petition for nonsupport against defendant for support of said Frederick Lee Maderia, said action being Number 82 of said June term or session.

"VI

On or about July 26, 1946, the said Court of Oyer and Terminer and Quarter Sessions of the Peace, having jurisdiction over defendant and after hearing evidence, ordered defendant to pay to his then wife, plaintiff, the sum of $10 per week for the support of said Frederick Lee Madeira until further order of the court. (A duly authenticated copy of said petition and court records is attached hereto, as Exhibit A, and incorporated herein by reference as though set forth at this place.)

"VII

As of May 31, 1963, the date of the filing of the First Amended Complaint in the matter before this Court, the said order of the said Court of Oyer and Terminer and Quarter Sessions of the Peace was still in effect and had not been changed, revoked or rescinded either by said court, or any other court, or by agreement by the parties, except as may be otherwise alleged in Paragraph VI of plaintiff's complaint (original) on file herein in action numbered 140480.

"VIII

Defendant has made none of the weekly payments ordered by said Court of Oyer and Terminer and Quarter Sessions of the Peace for the period between July 26, 1946, and August 23, 1961, and no part of said weekly payments between said dates has been paid or satisfied.

"Dated: May 7, 1965."

 Appellants do not contend that the Pennsylvania court order is a final judgment of a sister-state entitled to full faith and credit under the United States Constitution. On the contrary, appellants admit that, at the very most, the order sued upon is a modifiable support judgment; it is modifiable

retrospectively and prospectively under the Pennsylvania statutes. Appellants vigorously assert, however, that the order is enforceable in this state as a matter of comity. They also contend the order is civil in nature and not a penal judgment as respondent maintains.

It is of course true, as respondent insists, that there is substantial authority for the proposition that a modifiable support order or decree entered under the laws of one state is of no special interest to a sister-state and is not enforceable in the sister-state, not even as a matter of comity (Rest., Conflict of Laws, §§ 435, 458). However, this unenlightened point of view was emphatically rejected by our own Supreme Court in *Worthley* v. *Worthley*, 44 Cal.2d 465, 472-473 [283 P.2d 19]. Significantly, the court stated:

"This policy was rejected by this court in the *Biewend* case (see also *Hiner* v. *Hiner*, 153 Cal. 254, 257 [94 P. 1044]) and by the Legislature of this state in enacting the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., §§ 1650-1690.) In proceedings commenced pursuant to the provisions of that act, the California courts must recognize and enforce foreign alimony and support decrees whether modifiable or not (Code Civ. Proc., § 1670), and must afford the defendant an opportunity to litigate the issue of modification. (Code Civ. Proc., § 1682; *Griffin* v. *Griffin, supra,* 327 U.S. 220, 233-234 [90 L.Ed. 635, 642-643, 66 S.Ct. 556].) If we should now refuse to follow the policy expressed by the Legislature in the Uniform Act, and by this court and the United States Supreme Court in the *Sampsell* and *Griffin* cases, and should hold that even though the courts of this state have personal jurisdiction over the defendant, his obligations under a prospectively and retroactively modifiable sister-state support decree cannot be enforced in this state, the result would be anomalous. There would then be two rules in California, one for proceedings commenced under the Uniform Act, and a contrary one for all other proceedings to enforce foreign-created alimony and support obligations.

"Moreover, there is no valid reason, in a case in which both parties are before the court, why the California courts should refuse to hear a plaintiff's prayer for enforcement of a modifiable sister-state decree and the defendant's plea for modification of his obligations thereunder. If the accrued installments are modified retroactively, the judgment for a liquidated sum entered after such modification will be final

and thus will be entitled to full faith and credit in all other states. (*Magnolia Petroleum Co.* v. *Hunt,* 320 U.S. 430, 438-439 [88 L.Ed. 149, 154-155, 64 S.Ct. 208, 150 A.L.R. 413] and cases cited.) If the installments are modified prospectively, the issues thus determined will be res judicata so long as the circumstances of the parties remain unchanged."[1] And in the recent case of *Mark* v. *Safren,* 227 Cal.App.2d 151, 155 [38 Cal.Rptr. 500], the appellate court said: "Even if plaintiff here had not proven a final judgment, her claim on the decree would still have been enforceable in California as a matter of comity." (Fn. 3.)

Thus, the crucial question is whether the Pennsylvania court order is in reality a civil judgment awarding decedent child support for the support of the parties' minor child or a penal judgment to punish respondent for desertion and nonsupport. If the judgment is a penal judgment it is not enforceable in this state under either the full faith and credit clause of the United States Constitution or as a matter of comity. It is the prevailing rule throughout this country that no action can be maintained in one state to recover money extracted as punishment for a civil wrong committed under the laws of another state (Rest., Conflict of Laws, § 611, p. 730). As the United States Supreme Court succinctly stated in *Huntington* v. *Attrill,* 146 U.S. 657, 673, 674 [36 L.Ed. 1123, 1130, 13 S.Ct. 224]: "The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act."

Admittedly, the action which resulted in the support order in question was brought in the name of the Comonwealth of Pennsylvania. Moreover, the action was instituted under a statute (Pennsylvania Penal Code section 4733) which is labeled a penal statute and appears to have criminal

---

[1]In 13 Stanford Law Review, page 752, it is stated: "Although *Worthley* v. *Worthley,* in enforcing a modifiable foreign decree rejected the rule of the Restatement [Restatement, Conflicts of Law, Section 435], the decision was acclaimed by the law reviews; and, indeed it is difficult to understand objections to the result in view of the practical utility."

And in 3 U.C.L.A. Law Review, pages 247, 250, the author said: "Recognition and enforcement of modifiable alimony and support decrees are necessary to prevent the obligor from evading his duty of support by the simple device of moving to another jurisdiction."

overtones.[2] However, we conclude that the order is primarily civil in nature and that it is not essentially dissimilar to a child support order issued by the civil courts of this state,

[2]Penal Code section 4733 reads as follows: ''If any husband, or father, being within the limits of this Commonwealth, separates himself from his wife or from his children, or from wife and children, without reasonable cause, or neglects to maintain his wife or children, (1) his wife or children may file a petition, prepared by the. district attorney and joined in and consented to by the husband or father, in the court of quarter sessions of the county in which the wife or children reside or in the county wherein the desertion or failure to maintain took place, setting forth the facts relating to the separation from or neglect to maintain his wife or children, or both, whereupon the court, or any judge thereof in chambers, shall enter an order fixing a time and place for hearing; or (2) any magistrate, upon information made before him under oath or affirmation, by his wife or children, or either of them, or by any person, may issue his warrant for the arrest of the person against whom the information shall have been made, and bind him over, with one sufficient surety, to appear at the court of quarter sessions or other court having jurisdiction, there to answer the said charge of desertion.

''The said court, after hearing in a summary proceeding, may order the person against whom complaint has been made or petition filed, being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said wife or children, or both, and to commit such person to prison, there to remain until he shall comply with such order, or give security, by one or more sureties, to the Commonwealth, and in such sum as the court shall direct for the compliance therewith. But in no instance shall the defendant be required in any county of the first class to give security for compliance, or be imprisoned for failure to give security for compliance, unless and until the court finds on substantial evidence, (1) that the defendant is possessed of property, real or personal, in sufficient amount and in such form, as to enable him to give the required security, and (2) that the defendant is likely to dissipate his assets or flee the jurisdiction. In each instance in which security for compliance is ordered, the court shall enter upon the record the findings on the basis of which the order is made. The court may also issue the appropriate writ of execution against any property, real or personal, belonging to the defendant; and its writ of attachment execution against any money or property to which he may be in any way entitled, whether under what is known as a spendthrift trust or otherwise, which shall not exceed fifty per centum thereof, and shall remain a continuing levy until the order has been paid in full with costs. The person against whom an order is made shall not be entitled to the benefits of any exemption law now in force or hereafter passed.

''The provision of this section shall apply to any trust, whether it is known as a spendthrift trust or otherwise, whether such trust was created or came into existence before or after the passage of this act. Where an attachment execution is issued the further proceedings thereon shall be in the manner provided in the case of foreign attachments. .

. .''The court, after hearing as provided in this section, may also determine and make orders with respect to the: right of parents to visit their children:

. ''Any wife so deserted shall be a competent witness on the part of the Commonwealth, and the husband shall also be a competent witness.

''Should any such person abscond, remove or be found in any other county of the Commonwealth than the one in which said warrant issued,

irrespective of its label.[3] Pennsylvania Penal Code section 4733 does not purport to punish a defendant for an offense committed against the public justice of the State of Pennsylvania, nor is its purpose to extract money in payment for a civil wrong. On the contrary, the obvious purpose of the section is to protect wives and children by providing them with a speedy remedy which will insure their support in cases where errant fathers have reachable assets and there is danger that they will either dissipate these assets or flee the jurisdiction of the state.

The salient points in support of our conclusion are as follows:

First, even though an action under section 4733 is brought in the name of the Commonwealth, it may be instituted by the wife or children of a deserting husband. Moreover, even though the husband can be forced to appear through the issuance of a warrant of arrest, the court must hold a hearing to determine whether he has the ability to pay wife or child support, and if so, in what amount. And, significantly, at the conclusion of the hearing the court *may determine visitation rights.*

Second, if the court orders the husband to pay wife or child support, the husband may be imprisoned *only* if he fails to give security in compliance with the court's order and *then only* if the court also finds, on substantial evidence, that (1) the husband is possessed of sufficient real or personal property as to enable him to give the required security and (2) that he is likely to dissipate his assets or flee the jurisdiction of the court.

Third, a support order issued under section 4733 can be modified retrospectively and prospectively; it can be increased or decreased and the amount of any arrearages can be corrected or reduced.[4] It is elementary that a criminal sentence

---

he may be arrested by the said warrant being backed by any magistrate of the county in which such person may be found.

"Whenever the court of quarter sessions of any county in the Commonwealth commits the person complained of to the county prison, there to remain until he complies with their order or gives security, etc., the court may at any time after three (3) months if it shall be satisfied of the inability of such person to comply with the said order and give such security to discharge him from imprisonment."

[3] In *People* v. *Dunn*, 201 Cal.App.2d 269, 274 [19 Cal.Rptr. 835], the court stated that the topical heading of a code is not necessarily determinative of the character of the statute included within that heading.

[4] Under Title 17, Pennsylvania Statutes, section 263, any order of any Pennsylvania court for child support: ". . . may be altered, repealed,

for a particular offense, once imposed, cannot be increased at a later date.

Fourth and most important, a deserting husband or father who fails to support his wife or children may be prosecuted for a criminal offense under the public justice of the State of Pennsylvania under Pennsylvania Penal Code section 4731;[5] upon conviction the husband can be sentenced to imprisonment for a term not exceeding one year. Thus, the clear distinction between section 4731 and section 4733 was carefully explained by the superior court of Pennsylvania in *Commonwealth* v. *Widmeyer*, 149 Pa.Super. 91 [26 A.2d 125], where the court held that a support order issued under section 4733 is not a conviction of an indictable offense which would bar a subsequent prosecution under section 4731. Although we are not bound by the *Widmeyer* decision, since we are governed by the law of the forum (*Miller* v. *Municipal Court*, 22 Cal.2d 818 [142 P.2d 297]), we are nevertheless persuaded by its rationale.

It is of course arguable that the support order in question is not enforceable in this state even if it is deemed civil in nature because it was issued under a hybrid statutory procedure which is completely unknown in California. Be this as it may, the fact remains that the order sued upon is not essentially dissimilar to a child support order issued by the civil courts of California. And, generally speaking, according to the law of this state, a wife who has been awarded child support by a California court may collect all back payments (Civ. Code, § 137.1; see *Kresteller* v. *Superior Court*, 248 Cal.App.2d 545 [56 Cal.Rptr. 771]). Moreover, the same treatment has been graciously extended by our Supreme Court to foreign support judgments even though they may be modi-

---

suspended, increased, or amended, and the said court may, at any time, remit, correct, or reduce the amount of any arrearages, as the case may warrant.''

[5]Pennsylvania Penal Code section 4731 reads, in pertinent part, as follows: ''Whoever, being a husband or father, separates himself from his wife or from his children or from wife and children, without reasonable cause, or wilfully neglects to maintain his wife or children, such wife or children being destitute, or being dependent wholly or in part on their earnings for adequate support, is guilty of a misdemeanor, and on conviction thereof, shall be sentenced to imprisonment not exceeding one (1) year, or to pay a fine not exceeding five hundred dollars ($500), or both. Such fine, if any, may be paid or applied, in whole or in part, to the wife or children, as the court may direct.

''No such conviction, payment, or fine, or undergoing imprisonment shall in any manner affect the obligation of any order for support theretofore made against the defendant in any competent court.''

fiable retrospectively and prospectively (*Worthley* v. *Worthley, supra,* 44 Cal.2d 465). Thus, we see no valid reason for distinguishing between foreign judgments or orders simply because we are not familiar with the statutory machinery under which they were procured. On the contrary, the policy underlying the *Worthley* decision (which is to prevent wife and child deserters from escaping their legal obligations by fleeing to this state) dissuades us from doing so.

We shall now direct our attention to respondent's remaining contentions. ■ He asserts: the order is not enforceable in California because it was not enforceable by civil process in Pennsylvania; plaintiffs are not the real parties in interest; in any event the California court had discretion to deny recovery; appellants' claim is barred by the statute of limitations.

■ Respondent argues that a support order issued by a Court of Oyer and Terminer and Quarter Sessions of the Peace is unenforceable in California because it is not enforceable in Pennsylvania by civil process until it is certified to the Pennsylvania Court of Common Pleas under Pennsylvania statutes, sections 1001 and 1002. He also apparently concludes that when such an order is certified in the Court of Common Pleas it merges into a judgment of that court and the judgment creditor must sue on the latter judgment.

Section 1001 provides: "Where any court of quarter sessions of the peace or court of oyer and terminer of this commonwealth has heretofore made or entered, or shall hereafter make or enter, any order, sentence, decree, or judgment for the payment of any moneys whatsoever, in any matter or thing within the jurisdiction of said court, a copy of said order, sentence, decree or judgment may be certified to any court of common pleas of the same county, and be entered and indexed in said court as a judgment with like force and effect as if the same had been recovered therein as a judgment of the latter court."

Section 1002 provides: "When said order, sentence, decree, or judgment is entered as a judgment in the court of common pleas, aforesaid, the same may be revised by scire facias et quare executionem non, and be collectible by writs of fieri facias, venditioni exponas, and by testatum fieria facias and testatum venditioni exponas to other counties to sell real and personal estate, and by alias, pluries and such other writs of execution as shall be necessary to collect said judgment, which

writs, aforesaid, shall issue in the same manner and be of like force and effect for the sale of personal and real estate as if the said judgment had been originally recorded in the said court, except that the defendant in any such writs shall not be entitled to the benefit of any exemption laws.''

Defendant's arguments are without substance. Section 4733 expressly authorizes a Court of Oyer and Terminer to enforce its orders through the issuance of writs of execution. In fact, once issued, the writ remains a continuing levy on the defendant's property until the order has been paid in full. Moreover, it is clear from the plain language of sections 1001 and 1002 that the certification of the order to the Court of Common Pleas does not make it a judgment of the latter court. On the contrary, the certification merely affords the judgment creditor with additional collection remedies emanating from specialized writs issuable only from the Court of Common Pleas (*Commonwealth* v. *Embody*, 143 Pa.Super. 354 [17 A.2d 620]).

It is apparently undisputed that appellants were appointed executors of the last will and testament of decedent, Grace E. Cudlipp, under the laws of the State of Pennsylvania and were serving in that capacity when they were substituted in the California action. It is apparently also undisputed that appellants did not secure supplementary letters testamentary in this state. Thus, respondent apparently asserts that the trial court improperly allowed appellants to be substituted in the place of decedent and that its judgment against appellants should be affirmed for this if for no other reason.[6]

It is true that under Code of Civil Procedure section 913 the authority of an executor does not extend beyond the jurisdiction of the government under which he was invested with his authority. However, foreign executors and administrators have been permitted to sue in California as a matter of comity where no objection was raised in the trial court (*Canfield* v.

[6]We cannot tell from the record on exactly what grounds respondent objected to the substitution of appellants in the lawsuit in place of the decedent. And in this appeal respondent merely states that ''over the objection of respondent, the court below allowed the present appellant, in its representative capacity, to be substituted as a party, even though appellant is clearly a Pennsylvania corporation.'' Moreover, although we are informed that respondent petitioned the Court of Appeal (third district) for a writ of prohibition, we are also informed that his petition was denied. Respondent refers us to his points and authorities in support of this petition, but these points and authorities were not made a part of the record on this appeal.

514

*Scripps,* 15 Cal.App.2d 642 [59 P.2d 1040]). Thus, the capacity of a foreign executor or administrator to sue is not jurisdictional. Moreover, an exception is made with regard to lawsuits brought by foreign executors or administrators to recover on judgments which were initially acquired by the decedent or such executors or administrators in the state in which the executor or administrator was appointed (*Low* v. *Burrows,* 12 Cal. 181; *Lewis* v. *Adams,* 70 Cal. 403 [11 P. 833, 59 Am.Rep. 423] ; *Wheeling* v. *Financial Indem. Co.,* 201 Cal.App.2d 36 [19 Cal.Rptr. 879]). In *Low* the court stated: ''We concede that the administrator has power over only those assets within the State where letters are granted; and we might concede that in the case of notes, bonds, etc. on debtors who live and have their property beyond the jurisdiction, the administrator has no jurisdiction or dominion. But this is not the case in respect to judgments. There can be no doubt if a debtor, against whom the intestate in his lifetime obtained judgment, though at the time of the death of the intestate the debtor was beyond the jurisdiction, afterwards came within the jurisdiction, the administrator might proceed to collect the money from him. The effect of a judgment, as such, unlike a note, is confined to the State where rendered. It is therefore record evidence of a debt. It may be sued on, it is true, out of the State. But it is not easy to see how an administrator of the creditor in California could take to himself as assets a judgment remaining on record in New York, merely from the fact that the debtor happened, for the time being, to reside in California. If the debtor went back to New York, or had property there, it is clear that the California administrator could not collect the money. If he collected anywhere, it would not be by virtue of the judgment in New York vesting in him any title to it, but merely because the transcript of the judgment gave him evidence upon which he might sue. The judgment is a record, and for any use to be made of it, or any power to enforce it, by execution or other process, must belong to the administrator in New York; or this anomaly would result: That the administrator in California would own the judgment for the purpose of suing on it in California, and the administrator in New York would own it for the purpose of collecting it by issuing execution in New York. We think no such doctrine can be maintained.'' (12 Cal. at p. 188.) We conclude that the rationale of these cases applies to the Pennsylvania support order even though it does not have all of the attributes of a final judgment.

■ Respondent did not offer any evidence, nor do the stipulated facts show, any change of circumstances which would have warranted the trial court to modify the order in question retrospectively; on the contrary, respondent goes outside of the record to assert that the minor child had changed his name and that the court could refuse to enforce the support order for this reason. Respondent also apparently contends that the trial court had unlimited discretion to refuse to enforce the child support order because the order is modifiable both prospectively and retrospectively.

Appellants' contention is without substantial merit. The trial court did not purport to modify the order; it denied enforcement because it concluded that the order "is not a final judgment of a sister state entitled to full faith and credit." Moreover, respondent's suggestion that the trial court had unlimited discretion to modify the order, even if we should assume arguendo that it purported to do so, is predicated on an erroneous assumption; respondent apparently assumes that Pennsylvania courts have unlimited discretion to modify their support orders. We do not, however, understand this to be the law of that state. On the contrary, it is our understanding that modifications may be made only upon a showing of changed circumstances and then only if the party seeking modification sustains his burden of proof (*Commonwealth* ex rel. *Kreiner* v. *Scheidt,* 183 Pa.Super. 277 [131 A.2d 147, 64 A.L.R.2d 739]; *Commonwealth* ex rel *Mazon* v. *Mazon,* 163 Pa.Super. 502 [63 A.2d 112]).

■ Respondent, without pleading, by way of affirmative defense or otherwise, or even citing the applicable Pennsylvania statute of limitations and relying solely on *Philippi* v. *Commonwealth* (1851) 18 Pa. 116, boldly asserts that the trial court correctly refused to enforce the support order in question because no order or judgment of the Court of Oyer and Terminer may be revived after the expiration of a period of five years. The *Philippi* decision, however, does not stand for the proposition urged by respondent. Moreover, this action to enforce the Pennsylvania court order was brought in California, and hence the California (and not the Pennsylvania) statute of limitations controls. In this connection, Code of Civil Procedure section 337.5, subdivision 3 provides: "Within ten years: . . . 3. An action upon a judgment or decree of any court of the United States or of any state within the United States."

Appellants admit that when a judgment or order provides for periodic child support payments the applicable statute of limitations runs against each installment as it falls due (*De-Uprey* v. *DeUprey,* 23 Cal. 352). Appellants also admit that Code of Civil Procedure section 337.5, subdivision 3 is the applicable statute of limitations and controls in the instant case. They assert, however, that if a party elects to plead a statute by reference to its code section and subdivision (Code Civ. Proc. § 458), only the specific statute pleaded may be relied upon as a defense (*Kenney* v. *Parks,* 137 Cal. 527, 530 [70 P. 556]; *Archer* v. *Harvey,* 164 Cal. 274, 278 [128 P. 410]). Accordingly, they contend that respondent waived the defense of the statute of limitations in this case because the only statute that he pleaded is section 336, subdivision (1), and this section was repealed in the year 1953 (Stats. 1953, ch. 1153).[7]

We do not agree with appellants' contention. It is clear from the statutory history that when Code of Civil Procedure section 336, subdivision (1) was repealed in 1953 it was at the same time reenacted as Code of Civil Procedure section 337.5, subdivision 3. Thus, it is also reasonably clear that when respondent referred to section 336, subdivision (1) in his answer he meant to refer to section 337.5, subdivision 3, and that appellants were not misled by this inadverent error. Under these circumstances, we conclude that there was substantial compliance with the provisions of Code of Civil Procedure section 458 and that the interest of justice would not be served if we adhered to unbending rules of pleading. And this is particularly true in a case, where as here, it is reasonably certain that the trial court would have allowed respondent to amend his answer in order to correct his inadvertent error had the court decided the case on the merits.

The judgment is reversed and the cause is remanded to the lower court with directions to enter judgment in favor of appellants in accordance with the views expressed herein.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied May 21, 1968, and respondent's petition for a hearing by the Supreme Court was denied June 19, 1968. Mosk, J., was of the opinion that the petition should be granted.

---

[7] When this section was first enacted in 1872 it read: "Within five years: One. An action upon a judgment or decree of any court in the United States, or of any state within the United States . . ."