245 So.2d 57 (1971)
William C. HOLBEIN and Edward Ray Holbein, Appellants,
v.
Ray J. RIGOT, Appellee.
No. 39667.
Supreme Court of Florida.
February 24, 1971.
*58 William R. Dawes and Jeanne Heyward, Miami, for appellants.
Horton & Schwartz and Dennis I. Holober, of Levenson, Richman & Holober, Miami, for appellee.
ERVIN, Justice.
This appeal is concerned with the question whether Florida courts should give full faith and credit to a Texas court judgment awarding both compensatory and punitive damages to Texas plaintiffs because of their injury by a Florida defendant's wrongful act.
Plaintiffs (Appellants) William C. Holbein and Edward Ray Holbein, sued defendant (Appellee), Ray J. Rigot, in the District Court, 73rd District, Bexar County, Texas, to cancel a contract and for damages for false, fraudulent and malicious misrepresentations which induced plaintiffs to enter into a franchising agreement. Compensatory and punitive damages were sought.
Default judgment was entered against defendant after he had been served with a citation in the manner prescribed in Article 2031b, Vernon's Annotated Civil Statutes of Texas, for obtaining process on a nonresident who has engaged in business in Texas.
Final judgment for plaintiffs against defendant was entered in the sum of $36,613.03, as compensatory damages, and $25,000 punitive damages.
Plaintiffs then brought suit against defendant in the Circuit Court of Dade County on the Texas judgment. The Dade Circuit Court, after hearing the evidence submitted, entered final judgment in favor of plaintiffs for the full amount of the Texas judgment, plus interest and costs.
On appeal by the defendants to the District Court of Appeal, Third District, it affirmed the portion of the judgment for compensatory damages but reversed the portion of the judgment awarding plaintiffs punitive damages. See Rigot v. Holbein, DCA 3d, 233 So.2d 458. In its opinion the District Court said in part:
"Upon the issues made by the plaintiffs' complaint and the defendant's answer, the case was tried before the Court. The defendant admitted that he had lived in Florida since 1954, had received notice of the pendency of the Texas proceedings through the U.S. Mail but no other notices. After hearing the testimony and considering the documents, the Court entered final judgment in favor of the plaintiffs for the full amount of the Texas judgment plus interest and costs. Defendant did not at any time allege or assert fraud, nor did he allege or assert any proceeding *59 in Texas challenging the jurisdiction of the Texas Court and did not present any evidence in this cause providing that he had never transacted or done business in the State of Texas.
"The only point involved was whether or not the Texas judgment was entitled to full faith and credit under the Constitution of the United States. We believe that the final judgment is entitled to full faith and credit for the actual damages only but not entitled to full faith and credit for the exemplary or punitive damages. See Silitronic Chemical Corp. v. R.K.M. Enterprises, 197 So.2d 33 (Fla.App.3rd 1967); Clay v. Atchison, T. & S.F. Ry. Co., Texas, [Civ.App.] 201 S.W. 1072 affirmed, [Tex. Com.App.] 228 S.W. 907; Farmers & Merchants Trust Co. v. Madeira, 261 Cal. App.2d 503, 68 Cal. Rptr. 184; F.E.C. Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631."
The plaintiffs and defendant have appealed and cross-appealed here, respectively, from this decision of the District Court. Plaintiffs contend the reversal of punitive damages to be erroneous and the defendant contends the affirmance of compensatory damages to be erroneous.
We have concluded we have jurisdiction of these appeals because the District Court appears to have construed the full faith and credit provision of the United States Constitution (Section 1, Article IV) in arriving at its decision quoted from above. See Armstrong v. City of Tampa, Fla. 1958, 106 So.2d 407; In re Kionka's Estate, Fla. 1960, 121 So.2d 644, and Judd v. Schooley, Fla. 1963, 158 So.2d 514.
After study, we conclude the entire Texas judgment for both compensatory and punitive damages is entitled to full faith and credit in Florida courts. This judgment was not based on a Texas penal statute but was based on general common law liability for false, fraudulent and malicious representations on the part of defendant which wrongfully induced plaintiffs to their injury to enter into a franchising agreement with defendant. The Texas lawsuit is similar to a lawsuit in Florida allowable at common law on the basis of fraud or malice. See Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, and Associated Heavy Equipment Schools v. Masiello, Fla.App. 1969, 219 So.2d 465. See also, 22 Am.Jur.2d, Damages, § 243.
The enforcement in Florida of the Texas judgment does not violate the principle that penal laws of a state are not enforceable in another because the award of punitive damages here was not to punish defendant for an offense against the state or general public but to give plaintiffs redress or reparation by way of punitive or exemplary damages for the private wrong they suffered.
An exception to the constitutional guarantee of full faith and credit is that penal statutes of one state do not have extraterritorial effect.
The type of statute that qualifies as a penal statute as contrasted to a remedial statute or rule of law authorizing an individual to recover for a private wrong was comprehensively discussed in the leading case of Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123. There, a Maryland court refused to take jurisdiction of a bill to set aside stock transfers filed by a creditor who had recovered a judgment in New York. The New York judgment was based on a New York statute which made the director of the corporation liable for all corporate debts if he signed a false certificate concerning assets. The Maryland court refused jurisdiction on the basis that the statute prescribed a penalty and Maryland did not have to enforce a penal law of New York.
The Supreme Court of the United States reversed on the ground the New York statute was not a penal law in the international sense and the Maryland court had denied full faith and credit to the New York judgment. The Supreme Court set *60 down guidelines determinative of whether a law is penal or remedial and whether full faith and credit should be given. It said in part:
"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual, according to the familiar classification of Blackstone: `Wrongs are divisible into two sorts or species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals; and are thereupon frequently termed civil injuries: the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community; and are distinguished by the harsher appellation of crimes and misdemeanors.' 3 Bl. Comm. 2.
* * * * * *
"The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act. There could be no better illustration of this than the decision of this court in Dennick v. Central Railroad Co. of N.J., 103 U.S. 11 [26 L.Ed. 439].
* * * * * *
"Mr. Justice Miller, in delivering judgment, said: `It can scarcely be contended that the act belongs to the class of criminal laws which can only be enforced by the courts of the state where the offense was committed, for it is, though a statutory remedy, a civil action to recover damages for a civil injury. It is, indeed, a right dependent solely on the statute of the state; but when the act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal and not a real action, and is of that character which the law recognizes as transitory and not local, we cannot see why the defendant may not be held liable in any court to whose jurisdiction he can be subjected by personal process or by voluntary appearance, as was the case here. It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory right or a common law right. Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties.' [Dennick v. Central R. Co. of N.J.] 103 U.S. 17, 18 [26 L.Ed. 441]."
In James-Dickinson Farm Mortg. Co. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 369, Harry, a citizen of Illinois, sued Dickinson, a citizen of Texas, and the James Dickinson Farm Mortgages Co., a Missouri corporation, in an Illinois court for damages resulting from false representations by which Harry was induced to purchase a tract of land in Texas. In affirming judgment against Dickinson, the Supreme Court rejected the argument the Illinois judgment had in effect enforced Texas penal law, saying in part:
"* * * Exemplary damages are recoverable at common law in many states. A statute providing for their recovery by and for injured party is not a penal law. Huntington v. Attrill, 146 U.S. 657, 666-683, 13 S.Ct. 224, 36 L.Ed. 1123, 1127-1133. Compare Atchison, T. & S.F.R. v. Nichols, 264 U.S. 348, 350, 351, 44 S.Ct. 353, 68 L.Ed. 720, [727] [23 N.C.C.A. 549]. No reason appears why the cause of action arising under *61 the Texas statute should not be enforced in Illinois. The Texas statute as applied in this case does not add any extraordinary feature to the common law liability for fraudulent representations. * * *"
In Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198, it appears there was an action brought in New York to recover damages for injuries resulting in death arising out of an accident in Massachusetts.
The Massachusetts statute provided for the assessment of damages in the sum of not less than $500 nor more than $10,000 against a person whose negligence caused the death of another. The damages were to be assessed with reference to the degree of culpability.
Mr. Justice Cardozo, in holding that the Massachusetts statute was not penal in nature and therefore could be enforced in a New York court, said:
"`The courts of no country execute the penal laws of another.' The Antelope, 10 Wheat. 66, 123, 6 L.Ed. 268. The defendant invokes that principle as applicable here. Penal in one sense the statute indisputably is. The damages are not limited to compensation; they are proportioned to the offender's guilt. A minimum recovery of $500 is allowed in every case. But the question is not whether the statute is penal in some sense. The question is whether it is penal within the rules of private international law. A statute penal in that sense is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. Huntington v. Attrill, 146 U.S. 657, 668, 13 S.Ct. 224, 36 L.Ed. 1123; Huntington v. Attrill, [1903] A.C. 150, 156; Brady v. Daly, 175 U.S. 148, 154, 157, 20 S.Ct. 62, 44 L.Ed. 109; Raulin v. Fischer, [1911] 2 K.B. 93; Dicey, Conflict of Laws, p. 209. The purpose must be, not reparation to one aggrieved, but vindication of the public justice. Huntington v. Attrill, 146 U.S. 668, 13 S.Ct. 224, 36 L.Ed. 1123; Brady v. Daly, supra. * *"
* * * * * *
"We think the better reason is with those cases which hold that the statute is not penal in the international sense. On that branch of the controversy, indeed, there is no division of opinion among us. It is true that the offender is punished, but the purpose of the punishment is reparation to those aggrieved by his offense. * * *"
* * * * * *
"* * * But the punishment of the wrongdoer is not designed as atonement for a crime; it is solace to the individual who has suffered a private wrong. * *"
See also, Interstate Savings & Trust Co. v. Wyatt, 63 Colo. 1, 164 P. 506; Landum v. Livingston, Mo. App. 1965, 394 S.W.2d 573.
A cursory reading of the four cases cited by the District Court in its opinion discloses their inapplicability as any authority for its holding that full faith and credit is not accordable to the portion of the Texas judgment awarding punitive damages.
In sum, our holding is that plaintiffs' Texas suit insofar as it sought to recover punitive damages was based on common law liability arising from fraud to redress a private wrong inflicted on plaintiffs and did not purport to redress a public wrong predicated on a statute that is penal in the international sense which may not be enforced in the courts of other states. See Huntington v. Attrill, supra, and James-Dickinson Farm Mortg. Co. v. Harry, supra, and Winn & Lovett Grocery Co. v. Archer, supra, for the distinction indicated. Here the defendant is punished for the purpose of reparation to those aggrieved by his offense. Both Florida and Texas law and decisions authorize the recovery of punitive damages in a suit of the kind brought by plaintiffs in this case. See, e.g., Pan American Petroleum Corporation v. Hardy, Tex.Civ.App. 1963, 370 S.W.2d 904, and Winn & Lovett Grocery Co. v. Archer, supra.
*62 We find little merit to the contentions advanced by defendant-appellee in his cross-appeal. He did not file any cross assignments of error in the District Court Third contesting the authority of the Texas court to assess punitive damages without affording him a second notice that evidence would be taken concerning punitive damages after default judgment had been entered against him. Defendant claims that Rule 243 of the Texas Rules of Civil Procedure was unconstitutionally applied by the Texas court in assessing damages against him because no such notice was given him that testimony would be submitted by plaintiffs in the case for unliquidated demands. But Texas law, after a default, does not require such notice to be given a defendant. Western Union Telegraph Co. v. Skinner, 60 Tex.Civ.App. 477, 128 S.W. 715. Nor did he raise this point in the Florida trial court or in the Third District Court of Appeal. Defendant was served with statutorily prescribed process in plaintiffs' Texas suit, but chose to ignore it and default rather than to defend in the Texas court on the issues of liability and damages. See 47 Am.Jur.2d, Judgments, § 1272.
We find no merit in these and other contentions advanced by defendant-appellee. In respect to all these contentions, we repeat again the language of the District Court of Appeal:
"Defendant did not at any time allege or assert fraud, nor did he allege or assert any proceeding in Texas challenging the jurisdiction of the Texas court and did not present any evidence in this cause proving that he had never transacted or done business in the State of Texas."
Florida, under it's "long arm" statutes (e.g., F.S. Sec. 48.181, F.S.A.), similarly as Texas appears to have done, has extended rather than restricted securance of process through substituted or constructive service upon nonresidents who engage in business or business ventures in Florida. See DeVaney v. Rumsch, Fla., 228 So.2d 904, and duPont v. Rubin, Fla.App., 237 So.2d 795. See also, 47 Am.Jur.2d Judgments, § 1257. Since our decisions have liberally construed our "long arm" process statutes, it would be inconsistent for us to refuse to accord full faith and credit to similar process in a sister state.
Appellee-defendant on the basis of untimely raised and unassigned claims of error would have us now restrict or minimize on the basis of fundamental error the giving of full faith and credit to the service of process procedures and to the damages entered on default in a judgment of a court in another state. We are unable to find any sound basis for proceeding so extraordinarily in view of the evident failures on the part of defendant to timely and seasonably protect his rights in the trial courts and preserve pertinent assignments of error for appellate review.
The judgment of the District Court reversing the award of punitive damages to plaintiffs is in turn reversed by us, otherwise such judgment is affirmed. The cause is remanded with directions that the judgment of the Circuit Court be reinstated.
ROBERTS, C.J., and BOYD, McCAIN and DEKLE, JJ., concur.