Burke, J.
 

 The principal issue in this stockholders’ derivative action involves the substitution as defendants of the deceased nonresident defendant’s executors pursuant to CPLR 1015 (subd. [a]), and the constitutionality of our courts’ obtaining in personam jurisdiction over the substituted nonresident executors. The facts insofar as they are relevant are brief. The suit is brought by more than 90 stockholders of the defendant Hotel Corporation of America (not involved on this appeal) against 19 individual defendants, their families and the corporation for personal profits realized through certain real estate transactions between the corporation and the individual defendants (directors and officers thereof) in violation of their fiduciary duties. One of the defendants, A. S. Burg, a director and member of the corporation’s executive committee, was personally served with a summons and complaint under CPLR
 
 *28
 
 302 (subd. [a], par. 1) in Massachusetts on October 17, 1963 based upon his transaction of business in New York and he voluntarily appeared in the action by filing an answer to said complaint. (The defendant-appellant executors concede that jurisdiction had been properly obtained over the decedent.) Burg’s executors were appointed in Massachusetts on February 17, 1964 and, on September 17 of that year, the other defendants moved for a stay of all proceedings under section 627 of the Business Corporation Law until the plaintiffs posted the required security in this derivative suit. Such stay was granted on June 16, 1965 and remained in effect until January, 1966. During this period of September, 1964 through January, 1966 plaintiffs did not move for substitution of Burg’s executors. After the stay was vacated and on April 22, 1966 plaintiffs moved for an order to show cause why the nonresident executors should not be substituted for the deceased nonresident defendant pursuant to CPLR 1015 (subd. [a]), and substitution was ordered.
 

 The defendant-appellant executors contend on this appeal that the New York courts cannot constitutionally obtain in personam jurisdiction over nonresident executors who have committed no acts or transacted no business in this State, and that the plaintiffs’ application for substitution was not made within a reasonable time after the decedent’s death and consequently should not have been granted under CPLR 1015 (subd. [a]) and 1021.
 

 As to appellants’ second contention, an order of substitution pursuant to CPLR 1015 (subd. [a]) and 1021 is effected within the
 
 discretion
 
 of the court, Mr. Justice Dudley exercised his discretion in the plaintiffs’ favor, and this disposition was unanimously affirmed by the Appellate Division. Under these circumstances, the appellants are seeking review of a nonfinal exercise of discretion, and this court is powerless to review such a determination on an appeal based on a certified question. (Cohen and Kanger, Powers of the New York Court of Appeals [1952], p. 369; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5602.12;
 
 Platt
 
 v.
 
 Tenenbaum,
 
 16 N Y 2d 614 [1965];
 
 Matter of Palmer,
 
 115 N. Y. 493 [1889].) In any event, there would be no sufficient reason to find that Special Term abused its discretion as a matter of law. The total period of delay was a
 
 *29
 
 little over two years (February, 1964 to April, 1966), and during the interim a motion for a stay of all proceedings had been made by the other defendants in September, 1964, granted in June, 1965 and ultimately vacated in January, 1966. But for placing the executors on notice as to the pendency of the action, there was nothing to gain by plaintiffs’ moving for substitution during this period involving the stay. Under this view of the circumstances, the total period of delay amounted to but approximately ten months, certainly not an unreasonable length of time as a matter of law. Moreover, even if the entire two-year period is considered, we would be hesitant to describe the substitution as an abuse of discretion. (See
 
 Ruderman
 
 v.
 
 Feffer,
 
 10 A D 2d 704 [1st Dept., 1960] [six-year delay; substitution granted];
 
 Armstrong
 
 v.
 
 Rickard,
 
 226 App. Div. 371 [1st Dept., 1929] [eight-year delay; substitution denied];
 
 Mazzacano
 
 v.
 
 Jordan,
 
 40 Misc 2d 901 [Sup. Ct., Queens County, 1963] [five-year delay; no explanation; substitution denied].)
 

 Furthermore, at this stage of the proceedings, it is no valid objection to declare that any judgment rendered in this action would be of no force or effect against the decedent’s estate in Massachusetts under the laws of that State. Such a conjecture is indeed speculative and prematurely made. (See
 
 Leighton
 
 v.
 
 Roper,
 
 300 N. Y. 434, 443 [1950], referred to again
 
 infra.)
 

 As to the substantive issue presented on this appeal, viz., the constitutionality of the out-of-State service upon the nonresident executors, in light of the clear legislative intent embodied in CPLR 302 and 313, the many cases upholding similar if not identical laws in other jurisdictions, and the philosophical trend of the decisions in both the United States Supreme Court and our own Court of Appeals, we are convinced that to declare such out-of-State service invalid and unconstitutional would be unwarranted and not in conformity with the mainstream of current American jurisprudence.
 

 Prior to the enactment of the Civil Practice Law and Rules in 1962 and apart from the limited applicability of section 253 of the Vehicle and Traffic Law, there was no statutory authorization for out-of-State service on a nonresident executor or administrator in either a plenary action or a substitution proceeding such as the one being reviewed on this appeal. And CPLR 1015 (subd. [a]), which authorizes substitution of an
 
 *30
 
 executor or administrator in an action which has not been terminated by reason of the defendant’s death, was not intended to change any former practice available under the Civil Practice Act. (See Kochery, 1963 Practice Commentary to CPLB 1015 [McKinney’s Cons. Laws of N. Y., Book 7B, p. 429]; see generally 2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1021.04 [1966]; 3 Carmody-Wait 2d, N. Y. Practice, § 19 :160 [1965].) Accordingly, it is to CPLB 302, which expressly authorizes a court to ‘ ‘ exercise personal jurisdiction ’ ’ over a nondomiciliary’s executor or administrator, and CPLB 313, which authorizes out-of-State service thereon, that we must direct our attention in order to ascertain whether the Legislature has authorized the courts to obtain in personam jurisdiction over a substituted nonresident executor or administrator, and, if so, whether such exercise of personal jurisdiction complies with the current and viable constitutional safeguards imposed in this area.
 

 CPLB 302 recites that our courts may exercise personal jurisdiction over
 
 ‘ ‘
 
 any non-domiciliary,
 
 or his executor or administrator,
 
 as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state”. (Emphasis added.) And CPLB 313 provides that one “ subject to the jurisdiction of the courts of the state under section 301 or 302,
 
 or his executor or administrator,
 
 may be served with the summons [in this case, notice of motion] without the state, in the same manner as service is made within the state ”. (Emphasis added.) As noted at the outset, it is conceded that service in Massachusetts was properly effected on, and the court validly obtained in personam jurisdiction over, the decedent both because of his transaction of business here and because of his voluntary appearance in the action. Similarly, it is conceded that, if the statutory authorization for out-of-State personal service is constitutional, the appellants were validly served in Massachusetts.
 

 There is no doubt but that, in the past, statutory authorization for out-of-State service in cases such as this has been declared invalid as to the obtaining of in personam jurisdiction over nonresident executors or administrators who neither had any contacts with this State in their capacity -as representatives of the decedents nor had control over any estate
 
 *31
 
 assets within this jurisdiction. And the constitutionality of such enactments was seriously questioned, if not denied. (See, e.g.,
 
 Hopper
 
 v.
 
 Hopper,
 
 125 N. Y. 400 [1891];
 
 Helme
 
 v.
 
 Buckelew,
 
 229 N. Y. 363, 369 [1920]:
 
 “
 
 We are not referred to any precedent in any court of final review which upholds our right to say that the foreign executor as executor is present in New York when neither domicile nor possession gives to the
 
 res
 
 to be administered a situs in New York
 
 McMaster
 
 v.
 
 Gould,
 
 240 N. Y. 379, 385 [1925]: “ Following the leading case
 
 [Helme
 
 v.
 
 BueTcelew, supra],
 
 consistency requires us to say that the statute registers a futile effort to bind foreign administrators by a judgment
 
 in personam
 
 and as to them is unconstitutional in its inception.” See, also,
 
 Matter of Gantt,
 
 286 App. Div. 212 [1st Dept.,
 
 1955]; Matter of Rogers,
 
 225 App. Div. 286 [1st Dept., 1929], affd. 254 N. Y. 592 [1930];
 
 Matter of Riggle,
 
 11 N Y 2d 73 [1962] [dictum].)
 

 In 1945 the Supreme Court decided the ease of
 
 International Shoe Co.
 
 v.
 
 Washington
 
 (326 U. S. 310), heralding a new era in the concepts of jurisdiction and due process. As is well known, the court ruled that “ due process requires only that in order to subject a defendant to a judgment
 
 in personam,
 
 if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend
 
 '
 
 traditional notions of fair play and substantial justice.’ ”
 
 (Id.,
 
 p. 316.)
 

 Subsequent thereto our court upheld the validity of section 52 (now § 253) of the Vehicle and Traffic Law authorizing service of process upon a nonresident domiciliary
 
 or his executor
 
 when the action arises out of an automobile accident which occurred in this State.
 
 (Leighton
 
 v.
 
 Roper,
 
 300 N. Y. 434 [1950].) Therein we accurately stated the general rule as to the constitutionality of such provisions:
 
 “ ‘
 
 [T]he constitutional requirement of due process of law precludes the Legislature from providing
 
 generally
 
 [emphasis supplied] for continuing actions for judgments
 
 in personam
 
 against the foreign executors or administrators of deceased defendants.’ ”
 
 (Id.,
 
 p. 439.) Nevertheless, we upheld the nonresident motor vehicle statute on the fiction of waiver or consent, and recognized that there could be valid exceptions to the general rule based upon carefully drawn statutes which provided the necessary constitutional limitations: “ The statute is
 
 *32
 
 narrowly drawn to fit the need, provides all the procedural safeguards required for due process of law, and is applicable only to a cause of action arising in this State. Whatever may be said about the use of such a procedure in other situations, or ‘ generally, without restriction or qualification ’ where it might be argued that it would constitute an unjustifiable impingement upon the .sovereignty of other States, is therefore inapplicable here ” (p.
 
 443).-
 
 Regarding the substitution of a nonresident executor, this language in
 
 Leighton
 
 is similarly applicable to the restrictions and qualifications imposed by the Legislature in CPLR 302 and 313, both of which are narrowly drawn to fit the need, provide all the procedural safeguards required for due process of law, and are applicable only to causes of action having certain minimum contacts with this State.
 

 McGee
 
 v.
 
 International Life Ins. Co.
 
 (355 U. S. 220 [1957]) further presaged the rapid expansion of jurisdictional concepts undertaken since in State and Federal courts alike (cf.
 
 Hanson
 
 v.
 
 Denckla,
 
 357 U. S. 235 [1958]). Therein (p. 222) the court reflected on the clearly discernible trend toward expanding the permissible scope of State jurisdiction over foreign corporations and other nonresidents, and ruled that due process was satisfied if an action was based upon a substantial connection with the State obtaining jurisdiction over the nonresident. Such a trend, continuing today, is emphasized in an opinion by then Mr. Justice Goldberg, in chambers, wherein he quoted from Currie, The Growth of the Long Arm (1963 U. Ill. Law Forum 515, 540):
 
 “ 1
 
 Indeed, the constitutionality of this assertion of jurisdiction [over a nonresident pursuant to CPLR 302] could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes [as in
 
 Leighton
 
 v.
 
 Roper],
 
 which were long ago upheld, except that highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on
 
 “
 
 consent ” but on the interest of the forum State and the fairness of trial there to the defendant.’ ”
 
 (Rosenblatt
 
 v.
 
 American Cyanamid Co.,
 
 86 Sup. Ct. 1, 4-5; 15 L. Ed. 2d 39, 43 [1965].)
 

 The Illinois Supreme Court has had the opportunity of construing a statute similar in all respects to CPLR 302 op the
 
 *33
 
 issue of out-of-State service on a nonresident executor. The Illinois provision states that such conduct (as described in CPLR 302) “ submits such person, and, if an individual,
 
 his personal
 
 representative,” to the jurisdiction of the Illinois courts. In
 
 Hayden
 
 v.
 
 Wheeler
 
 (51 Ill. App. 2d 396 [1964]), a plenary action against the executor rather than, as on this appeal, a substitution proceeding, the Illinois intermediate appellate court ruled that ‘
 
 ‘
 
 personal representative ’ ’ as used in the statute did not include executor or administrator, and in denying jurisdiction cited cases similar to the early New York decisions referred to above. The Illinois Supreme Court reversed (33 Ill. 2d 110 [1965]) and, while recognizing the general rule of the New York cases (citing
 
 Leighton
 
 v.
 
 Roper, supra),
 
 held that there was no constitutional bar to such out-of-State service on nonresident executors or administrators. After noting that the defendant-appellant had conceded that the Illinois Legislature could validly confer such jurisdiction if it so desired, the court stated (p. 114): “ Furthermore, the construction of section 17 [similar to CPLR 302] argued for by defendant and approved by the appellate court would mean that persons injured in this State have redress in our courts while a nonresident tortfeasor is living, but no such remedy in the event the tortious act is serious enough to cause the tortfeasor’s death.” This, the court reasoned, was a
 
 non sequitur
 
 which could be legislatively cured without any deprivation of due process of law under the Federal Constitution.
 

 In
 
 United States
 
 v.
 
 Montreal Trust Co.
 
 (35 F. R. D. 216 [S.D.N.Y., 1964]) the Federal Government instituted a plenary action against nonresident executors to recover income taxes for the years 1944, 1945 and 1946 on moneys earned by the decedent in his transaction of business within the State of New York. The decedent had died in 1955 as a domiciliary of Vancouver, B. C., and his executors, the Montreal Trust Co. and one Tillie Lechtzier, were both residents of Vancouver. Service of process was made in Vancouver in accordance with CPLR 302 and 313, and the Montreal Trust Co. moved to dismiss the suit in the Southern District Federal Court on constitutional grounds,
 

 
 *34
 
 That court upheld the constitutionality of the statutes in question. It concluded that a statutory authorization for obtaining valid in personam jurisdiction over nonresident executors was within the constitutional power of a State Legislature, citing
 
 International Shoe (supra),
 
 and indicated that similar statutes had been previously upheld
 
 (Nelson
 
 v.
 
 Miller,
 
 11 Ill. 2d 378 [1957];
 
 National Gas Appliance Corp.
 
 v.
 
 AB Electrolux,
 
 270 F. 2d 472 [7th Cir., 1959];
 
 Magnaflux Corp.
 
 v.
 
 Foerster,
 
 223 F. Supp. 552 [N. D., Ill., 1963]).
 

 Subsequently, the Second Circuit Court of Appeals indicated its approval of this decision, declaring that there could be no serious challenge to the constitutional power of the New York Legislature to enact CPLB 302 in light of ‘' International Shoe Co. v. State of Washington, supra, [which] authorizes a state to assert its jurisdiction [in this manner].”
 
 (United States
 
 v.
 
 Montreal Trust Co.,
 
 358 F. 2d 239, 242 [2d Cir.], cert. den. 384 U. S. 919 [1966].) After citing
 
 Longines-Wittnauer Watch Co.
 
 v.
 
 Barnes & Reinecke
 
 (15 N Y 2d 443 [1965]), the Circuit Court stated:
 
 “
 
 We are satisfied here, that Klein, through the activities conducted by his agents in New York, transacted sufficient business in this state to justify the government’s service of process upon his estate pursuant to the provisions of New York’s long arm ’ statute. ’ ’
 
 (Id.,
 
 p. 244.)
 

 In addition to the clear trend toward constitutional expansion of the concept of jurisdiction in light of
 
 International Shoe
 
 and
 
 McGee (supra),
 
 the New York decisions which would allow such an expansion even under their cautiously limited language (e.g.,
 
 Leighton
 
 v.
 
 Roper, supra),
 
 and the express authorization of such out-of-State service upon nonresident executors contained in CPLB 302 and 313, the above decisions indicate that there is no longer any constitutional prohibition or deficiency in such enactments. Accordingly, in this substitution proceeding no valid constitutional defect can be found to exist. (See, also,
 
 Nexsen
 
 v.
 
 Haupt & Co.,
 
 44 Misc 2d 629 [Sup. Ct., Nassau County, 1964]:
 
 Johnson
 
 v.
 
 Jay,
 
 45 Misc 2d 101 [Sup. Ct., N. Y. County, 1965.])
 

 For these reasons, and solely on the issue of the constitutional validity of the out-of-State service upon the nonresident executors, the order of the Appellate Division should be affirmed, and the certified question should be answered in the affirmative.
 

 
 *35
 
 Chief Judge Fuld and Judges Van Voorhis, Scileppi, Bergan and Keating concur; Judge Breitel taking no part.
 

 Order affirmed, with costs. Question certified answered in the affirmative.