And now, this 28 of February, 1969, it is ordered that the judgment of the Municipal Court in this case is affirmed for reasons set out in the Memorandum filed this day in the above-captioned matter.

**FRANKLIN NATIONAL BANK,**
**Plaintiff,**

**v.**

**Bernard KRAKOW, as Co-executor.**

**Blanche ROSE, as Co-executrix of the Estate of Charles Rose, Deceased, Defendants and Third-Party Plaintiffs,**

**v.**

**Marshall COYNE, Third-Party Defendant.**

**Civ. A. No. 661–68.**

United States District Court
District of Columbia.

Jan. 23, 1969.

Branko Stupar, Washington, D. C., for plaintiff.

**914**

Louis Ginberg, Washington, D. C., for defendants Krakow and Rose.

Irving Yochelson, Washington, D. C., for third-party defendant Coyne.

MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This is an action for recovery of a disputed claim against an estate under Title 20 of the District of Columbia Code, D.C.Code § 20–1318 (1967). The claim is based on a default judgment in the sum of one hundred twenty-two thousand seven hundred and ninety-two dollars and fifty cents ($122,792.50) rendered by the Supreme Court of the State of New York, County of Nassau, in favor of Plaintiff bank against the estate of Charles Rose. The New York judgment was predicated upon a promissory note for one hundred thousand dollars ($100,000), dated January 6, 1966, and drawn by decedent Charles Rose and Marshall B. Coyne, the third party defendant in the instant case. The additional amount of the judgment includes a fifteen percent attorney's fee and six percent interest to the date of entry of the judgment. In short, the instant lawsuit is in the nature of a suit in the District of Columbia to enforce a judgment rendered by a court of another jurisdiction, namely the State of New York.

The motion presently before the Court is a Motion by Plaintiff for Judgment on the Pleadings against Defendants, co-executor and co-executrix of the estate of Charles Rose. Plaintiff's motion is made under authority of Rule 12(c) of the Federal Rules of Civil Procedure. In support of the motion, Plaintiff argues that the United States District Court for the District of Columbia previously granted Plaintiff's motion to dismiss Defendants' counterclaim which had alleged the invalidity of the New York judgment; and that such decision is a recognition by this Court of the validity of the New York judgment for all purposes and is res judicata of all the issues involved.

Defendants reply that the Motion for Judgment on the Pleadings should be denied because the answer raises issues of fact which, if proved, would defeat recovery. Specifically, they argue that the New York court did not have jurisdiction to render a default judgment, and, as a result, this Court is not bound to give full faith and credit to the New York judgment. In addition, they argue the invalidity of the New York judgment on the ground that Defendant Blanche Rose was not served with process of any nature in the New York action. Defendants also contend that the decision of another judge of this Court, in granting the motion to dismiss the counterclaim, was not an adjudication of the validity of the New York judgment, since the defense of lack of jurisdiction was not even in issue at that time.

After carefully considering the arguments in support of and in opposition to the Motion for Judgment on the Pleadings raised in memoranda, argument in open court and then in supplemental memoranda, we conclude that the Motion must be denied.

1. *Previous Order of Court Not Res Judicata*

 The Court's dismissal of Defendants' counterclaim on June 28, 1968, is not res judicata on the issue of the validity of the New York judgment. The issue of the New York court's jurisdiction to render that judgment, although mentioned in Defendants' points and authorities in opposition to the motion to dismiss, was apparently not the determinative factor in that decision. The order of dismissal in no way indicates that it was based on a finding that New York had jurisdiction, nor is there any reference in the order to the question of jurisdiction. Since the reason for the Court's decision was not enunciated, this Court cannot attribute one specific rationale to the order when there are other even more logical explanations for the action taken. In any event, this Court is not bound by anoth-

er Court's action on an unrelated motion. See Indian Lake Estates, Inc. v. Ten Individual Defendants, 121 U.S. App.D.C. 305, 309 n. 13, 350 F.2d 435, 439 n. 13 (1965).

2. *Nature of Motion for Judgment on Pleadings*

The implication, contained in Plaintiff's Additional Memorandum of Law, that we are bound by the face of the record in the New York action or by the mere fact that its complaint alleges facts which might support jurisdiction, is contrary to the law governing a motion for judgment on the pleadings. The law is settled that judgment on the pleadings is not appropriate where the answer raises issues of fact which, if proved, would defeat recovery. For the purposes of such a motion, all allegations of the opposing party's pleadings are taken as true and all allegations of the moving party which have been denied are taken as false. 2A Moore's Federal Practice ¶ 12.15 (1968 ed.).

Plaintiff further fails to consider that Rule 12(c) of the Federal Rules of Civil Procedure provides: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *." The parties have submitted and this Court has considered the Motion for Judgment on the Pleadings, the opposition to that Motion, the memoranda and supplemental memoranda in support of and in opposition to the Motion, other memoranda in the file and certain affidavits, all of these being outside the formal pleadings. Therefore, the pending motion must be considered in the context of Rule 56 of the Federal Rules of Civil Procedure pertaining to summary judgments. The question presented by a motion for summary judgment is, like that presented by a motion for judgment on the pleadings, one of law and, "if a genuine issue of material fact exists, the motion must be denied." 6 Moore's, supra at ¶ 56.09.

Similarly, on a motion for summary judgment, as on a motion for judgment on the pleadings, any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). See also Isen v. Calvert Corp., 126 U.S.App. D.C. 349, 379 F.2d 126 (1967). "If the inferences thus drawn would preclude a judgment for the movant, then a genuine issue of material fact exists and summary judgment must be denied." Continental Casualty Co. v. Beelar, 405 F.2d 377, 378 (D.C.Cir.1968). See also 6 Moore's supra at ¶ 56.09.

Viewing the underlying facts and the inferences to be drawn therefrom in a light most favorable to Defendants, we find that Defendants' opposition to Plaintiff's Motion raises genuine issues of material fact which, if proved, would establish that the New York court lacked jurisdiction to render the default judgment and would thus defeat recovery in the instant action. Such factual issues are raised by the following allegations contained in Defendants' opposition to the Motion for Judgment on the Pleadings: Defendant Blanche Rose was not served with process of any kind in the New York action. Defendant Bernard Krakow was served in the District of Columbia. The negotiations leading to the loan made to the decedent and the co-maker were entered into in the District of Columbia by the parties and a representative of the bank who came to the District of Columbia and entered into the loan with them in the District. Neither of the makers of the note went to New York in connection with the note or the loan and they had no physical contacts with New York State in connection with the transactions involved in this suit. Decedent signed the note in the District of Columbia. Any actual transmission was by mail from the District of Columbia. The only connection with New York State is that a provision of the note provided that the note shall be governed

and construed in accordance with the laws of New York.

3. *Full Faith and Credit and the Issue of Jurisdiction*

 It is a well established principle that the courts of one state within our federal system are bound to give full faith and credit to the judgments of the courts of another. U.S.Const. art. IV § 1; Morris v. Jones, 329 U.S. 545, 67 S. Ct. 451, 91 L.Ed. 488 (1946); Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 437–439, 64 S.Ct. 208, 88 L.Ed. 149 (1943). And federal courts must give full faith and credit to judgments of state and territorial courts. Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941); Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 36 (1938). However, it is equally well settled that "a court of one state is not required by the full faith and credit clause to regard as conclusive a judgment of a court of another state if the court of the latter had no jurisdiction of the subject matter or of the parties in the constitutional sense." Operative Plasterers' & Cement Finishers' International Ass'n of the United States & Canada v. Case, 68 U. S.App.D.C. 43, 49, 93 F.2d 56, 62 (1937). See also Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 134, 32 S.Ct. 641, 56 L.Ed. 1009 (1921); Cole v. Cunningham, 133 U.S. 107, 112, 10 S.Ct. 269, 33 L.Ed. 538 (1890). The full faith and credit clause "does not preclude an inquiry into the jurisdiction of the court which pronounced the judgment," *Bigelow,* supra at 135, 32 S.Ct. at 645, by the court in which the judgment is sought to be enforced. Such a judgment may always be attacked in the courts of the second state "by proof that the [first] court had no jurisdiction, even when the record purports to show jurisdiction." Williams v. North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577 (1945). Thus, a judgment of the courts of one state will be given full faith and credit by the courts of a sister state or by the federal courts only if it is a valid judgment, H. Goodrich, Conflict of Laws §§ 206, 208 (Scoles ed. 1964); it is a valid judgment only if the court in the judgment-rendering state "had power to pass on the merits—had jurisdiction, that is, to render the judgment," *Williams,* supra at 229, 65 S.Ct. at 1095; the question of the court's jurisdiction may be examined by the court in which enforcement of the judgment is sought. *Williams,* supra at 229, 65 S.Ct. 1092. See also H. Goodrich, supra at § 209; Restatement of Conflict of Laws § 429 (1934) [hereinafter cited Restatement of Conflicts]; Restatement of Conflict of Laws § 429 and comments e and f (Tent. Draft No. 10, 1964) [hereinafter cited Restatement of Conflicts (Tent. Draft No. 10)]. Thus, the full faith and credit clause of the Constitution does not preclude an inquiry by this Court into the jurisdiction of the New York court to render the judgment sought to be enforced here.

4. *Applicable Law and the Right to Contest Jurisdiction*

 In making this inquiry, we are bound to apply the law of New York applicable to the question of jurisdiction, rather than District of Columbia law, for it is "no longer possible for a court to be put into the position of having to deny enforcement to a sister-state judgment which, while valid under its own law, falls short of the forum's jurisdictional standards." A. Ehrenzweig, A Treatise on the Conflict of Laws § 59 (1962). In other words, the mere fact that the jurisdictional standards of the District of Columbia might not support a judgment such as the one rendered by the New York court is not a valid ground for us to refuse to recognize the validity of the New York judgment. All that is required is that the judgment-rendering court in New York "has properly claimed jurisdiction under its own law in accordance with constitutional due process." A. Ehrenzweig, supra at § 59. See also Restatement of Conflicts § 589; Restatement of Conflict of Laws

§ 589 and comment a (Tent. Draft No. 11, 1965) [hereinafter cited Restatement of Conflicts (Tent. Draft No. 11)]. So far as the due process requirement is concerned, it is clear that the method of serving process and giving notice to defendant are to be determined by the law of the judgment-rendering state. H. Goodrich, supra at § 82.

■■■■■ It should be noted at the outset that it is the law of New York that a defendant's right to contest jurisdiction is not waived where he neither appears nor objects to jurisdiction prior to the entry of a default judgment against him. Waters v. Waters, 28 Misc.2d 289, 290, 212 N.Y.S.2d 856, 857 (Sup.Ct., New York County, 1961). See also J. Weinstein, H. Korn, A. Miller, Weinstein-Korn-Miller Manual: CPLR 3–9 (1967) [hereinafter cited Weinstein, Korn & Miller]. Thus, Plaintiff's argument that Defendant was required to go into New York State to contest jurisdiction, and that his present jurisdictional objections come too late, is without merit. Defendants were free to "ignore the [New York] proceedings and ultimately resist any enforcement of the default judgment" that Plaintiff obtained, since, if the judgment-rendering court lacked jurisdiction, the judgment is a nullity. H. Wachtell, New York Practice Under the CPLR 50 (2d ed. 1966).

### 5. *Jurisdiction: Basis*

Obtaining jurisdiction is essential, since any court action taken in its absence is subject to nullification directly in the action on the court's own motion or, collaterally, in another action in or outside of New York State. Exercise of judicial power by the State through its courts requires the satisfaction of requirements which fall under three heads: subject matter, basis, and service. ——— Weinstein, Korn & Miller, supra at 3–1.

Whether the New York court had subject matter jurisdiction is not in issue in the instant case. Plaintiff alleges that the New York Supreme Court had in personam jurisdiction to render the judgment by virtue of the so-called New York "long-arm" statute, and Defendants deny that such personal jurisdiction was acquired. Thus, we need only be concerned with the elements of "basis" and "service", the two essentials for valid in personam jurisdiction.

■■■■■ Jurisdictional "basis" connotes the principle that the state must have certain minimum contacts with the parties making it reasonable for the courts to exercise power to affect their legal relations. The term "reasonable" is construed in the context of the due process clause of the Constitution. Weinstein, Korn & Miller, supra at 3–3. One such basis which has been deemed "reasonable" is jurisdiction based upon certain minimum contacts related to defendant's acts within the state. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The New York "long-arm" statute was "designed to take advantage of the constitutional power of the State of New York to subject nonresidents to personal jurisdiction when they commit acts within the state." 2 N.Y. Adv. Comm.Rep. 39 (1958). It provides in pertinent part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; * * *

—New York Civil Practice Law and Rules [hereinafter cited CPLR] § 302(a), in 7B McKinney's Consol. Laws (1968–69 Supp.).

■■■■■ Applying the "transaction of business" clause of the "long-arm" statute, CPLR § 302(a) (1), as it has been interpreted by the courts of New York, to the facts as alleged by Defendants, we conclude that there was no jurisdictional basis on which the Supreme Court of New York could invoke personal jurisdiction. The "transaction of

business" clause requires some "purposeful activity" in New York State "in relation to the contract, albeit preliminary or subsequent to its execution." Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965). It requires that defendants have voluntarily elected to invoke the protection of the laws of New York. Supplementary Practice Commentary, CPLR § 302 (1968–69 Supp. at 114). Physical presence in the state either during preliminary negotiations, or during execution or performance of the contract is considered in determining in a particular case whether one has engaged in "purposeful activity" or has invoked the protection of New York's laws, such as to constitute "transacting business" for the purposes of CPLR § 302(a) (1). *Longines-Wittnauer*, supra.

■ In the instant case, Defendants allege that there were no physical contacts with New York State and that all preliminary negotiations and the execution of the note itself took place in the District of Columbia. The obligation was to be performed by mailing payments from the District of Columbia to New York. The test of *Longines-Wittnauer*, supra does not appear to have been met. There was no "purposeful activity" and no attempt to invoke the protection of New York law. The only connection with New York was that the promissory note provided that it should be governed and construed in accordance with the laws of New York State. However, no court has held this factor alone to be conclusive on the issue of jurisdiction, if the defendant had no other contacts with the state. Weinstein, Korn & Miller, supra at 3–5.

■ Whether the type of activity conducted within New York State is adequate to constitute "transacting business" under the "long-arm" statute, CPLR § 302(a) (1), depends upon the facts in each case; the question cannot be answered by applying a mechanical formula. Schroeder v. Loomis, 46 Misc. 2d 184, 259 N.Y.S.2d 42, 45 (Sup.Ct., Broome County, 1965). Since judgment on the pleadings and summary judgment are inappropriate when there are genuine issues as to material facts, 2A Moore's, supra at ¶ 12.15; 6 Moore's, supra at ¶ 56.09, it is fruitful to review the facts of New York cases analogous to our own, in order to see how the courts of New York have interpreted the "long-arm" statute, CPLR § 302, in light of particular factual situations. It will be seen from this review that the factual questions raised by Defendants and contested by Plaintiff are indeed material to a determination of the jurisdictional issue.

In the leading case of Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), the New York Court of Appeals was confronted with the situation of a nonresident who never came into the state, but who sold and sent goods into the state pursuant to an order sent from within the state. The original contract was arranged in Paris and all shipments to plaintiff in New York were f. o. b. European ports. The Vogls themselves carried on no sales, promotional or advertising activities in New York. The Court of Appeals rejected jurisdiction under CPLR § 302(a) (1) on the ground that the phrase "transacts any business within the state" does not cover the situation of a nonresident who never comes into New York State but who sells and sends goods into the state pursuant to an order sent from within the state. *Kramer*, supra at 31, 267 N.Y.S.2d at 903–904, 215 N.E.2d at 161–162. In the instant case, the facts surrounding the preliminary negotiations and the execution of the promissory note, and the performance of the obligations thereunder, are strikingly similar to the facts in *Kramer*.

In another analogous case, the Court of Appeals for the Second Circuit, applying the test of *Longines-Wittnauer*, supra, stated, "We fail to see in what material respect Hammons invoked the benefits and protections of New York law merely by negotiating and conclud-

ing goods contracts through the mails and by telephone with persons residing in New York." Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965). See also, Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 278 F.Supp. 52 (S.D.N.Y. 1967). Similarly, we fail to see, on the facts alleged by Defendant, in what material respect Charles Rose invoked the benefits and protections of New York law by arranging a loan through the mails and by telephone with persons residing in New York and by agreeing to mail payments to New York.

Probably the case most closely analogous to the problems before this Court is Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co., Inc., 28 App.Div. 2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967). *Hubbard* involved an Oregon corporation which executed a note in Arizona and delivered it in Arizona to plaintiff, a New York corporation. The note was given for services rendered in obtaining a mortgage commitment from a bank in New York, to finance the purchase of property in Arizona. Payment of the note was required to be made in New York. Defendant never physically entered the State of New York. The court held that defendant transacted no business in New York and committed no purposeful act in the state. Defendant's contacts with New York were insufficient to enable plaintiff to obtain personal jurisdiction under CPLR § 302(a) (1). *Hubbard,* supra. In the instant case, facts similar to those in *Hubbard* dictate the same conclusion; Charles Rose's contacts with New York were insufficient to enable Plaintiff to acquire personal jurisdiction under CPLR § 302(a) (1).

In sum, applying the New York interpretation of its own "long-arm" statute, CPLR § 302(a) (1), to the facts as alleged by Defendants, we conclude that the New York Supreme Court, Nassau County, had no jurisdictional basis on which to exercise in personam jurisdiction over the Defendants now before this Court. As a result, this Court is not required to give full faith and credit to the New York judgment on a Motion for Judgment on the Pleadings or for Summary Judgment. Of course, this determination in no way precludes the development of facts at trial which would support a conclusion that the New York court did in fact have sufficient jurisdictional basis to render a valid judgment.

### 6. *Jurisdiction: Service*

In addition to the requisite jurisdictional "basis," the second requirement for the exercise of in personam jurisdiction is that a reasonable method be used to notify a defendant of the proceedings and that he be given a reasonable opportunity to be heard. Weinstein, Korn & Miller, supra at 3–10. In order that a foreign judgment be given effect, it is necessary that the defendant have been given the required notice and opportunity to be heard. H. Goodrich, supra at § 205; Restatement of Conflicts § 429; Restatement of Conflicts § 429 and comment h (Tent. Draft No. 10). Otherwise, the judgment is rendered in violation of the due process clause of the fourteenth amendment, is therefore void and is not entitled to full faith and credit by the court in which enforcement is sought. Restatement of Conflicts § 589 and comment a; Restatement of Conflicts § 589 and comment a (Tent. Draft No. 11).

It is alleged that Blanche Rose, co-executrix of the estate of Charles Rose, was not served with process of any kind in the New York action and thus had no notice of the suit. The principles of due process which require notice and an opportunity to be heard would therefore seem to preclude our giving full faith and credit to the New York judgment. See 30A Am.Jur., Judgments § 265 (1958). However, there is a New York statute which provides that jurisdiction is complete when service of process is made upon one of the multiple representatives of an estate, and that a subsequent judgment binds even those who were not served, in their represen-

tative capacities. New York Estates, Powers and Trusts Law (EPTL) § 11–.4.4, in 17B McKinney's Consol.Laws (1967). In the absence of a successful constitutional challenge to this statute, we are bound to apply this law in determining whether there was valid service in the New York action.

 The question then becomes whether there was valid service on Bernard Krakow, the other defendant and co-executor of the estate of Charles Rose. It is admitted that Bernard Krakow was served with process. However, Defendants argue that such service was defective, since Krakow was personally served in the District of Columbia, rather than in New York. Under New York law, such service may be valid in certain circumstances. Personal service outside the state is valid only if the person served is subject to jurisdiction under CPLR § 302, and if the process server is either a New York resident over eighteen years of age who is not a party, or a person authorized to make service of process by the laws of the jurisdiction in which service is made, or a duly qualified attorney in such jurisdiction. CPLR § 313. See also H. Wachtell, supra at 31–34.

CPLR § 313, which authorizes such out-of-state service, is contrary to the decision of our Court of Appeals in Von Opel v. Von Opel, 103 U.S.App.D.C. 288, 257 F.2d 666 (1958). In that case, the Court held that since defendants were not residents of New York nor personally served there, the New York court lacked personal jurisdiction over them. While New York law would normally control, we need not now resolve the conflict between the New York statute and the District of Columbia case, since service of process under CPLR § 313 is only valid where the person served is subject to jurisdiction under CPLR § 302. Since we have already concluded that there was no jurisdictional basis on which the New York court could invoke "long-arm" jurisdiction under CPLR § 302(a) (1), and since we now find that jurisdictional basis under that statute is a prerequisite to out-of-state service under CPLR § 313, service of process on Defendant Krakow could not be valid in any event.

Having reached this conclusion, there is no need to decide whether the traditional rule, that nonresident executors cannot be sued in their representative capacity in a foreign jurisdiction, Vaughan v. Northrup, 40 U.S. (15 Pet.) 1, 10 L.Ed. 639 (1839), is still good law. New York has recently rejected this rule and has held that where there was sufficient contact with New York State by the nonresident decedent to establish jurisdiction, that contact is sufficient to continue the action against the nonresident executor. Rosenfeld v. Hotel Corp. of America, 20 N.Y.2d 25, 281 N.Y.S.2d 308, 228 N.E.2d 374 (1967). Whether the New York rule could survive a constitutional challenge on the basis of due process, however, is a question about which there is doubt and which may ultimately be resolved by the Supreme Court.